In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2573

DANIEL DIEDRICH and NATALIE DIEDRICH,

*Plaintiffs-Appellants*,

*v.*

OCWEN LOAN SERVICING, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-00693-NJ — **Nancy Joseph**, *Magistrate Judge*.

ARGUED JANUARY 5, 2016 — DECIDED OCTOBER 6, 2016

Before WOOD, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. The Real Estate Settlement Procedures Act (RESPA) sets forth specific procedures that a mortgage lender or mortgage servicing company must follow in response to a borrower's request for information. Ocwen Loan Servicing, LLC failed to follow the letter of the procedure when responding to the plaintiffs Daniel and Natalie Diedrichs' request for information. The Diedrichs sued, but

the district court granted summary judgment for Ocwen, finding that the Diedrichs had failed to set forth sufficient facts, which, if taken as true, would establish that they were injured by the RESPA violation. The Diedrichs appealed and we affirm.

## I.

In 2007, Natalie and Daniel Diedrich executed a note to Decision One Mortgage Company in the amount of $184,000. To secure the note, they executed a mortgage. At the time of the relevant events, Ocwen serviced the Diedrichs' loan. Ocwen began foreclosure proceedings in September, 2010. The Diedrichs dispute that they defaulted under the terms and conditions of the note and mortgage, but that is not the subject of the dispute in this case. Ocwen and the Diedrichs entered into a loan modification agreement dated May 20, 2011, which was to be implemented beginning July 1, 2011. After the Diedrichs began making payments pursuant to the loan modification agreement, they alleged that they became concerned about whether their escrow account was being correctly administered and whether they were being charged improper litigation fees.

On or around February 22, 2013, the Diedrichs sent Ocwen a letter in which they requested eight types of standard information about their account including the names of employees working on their account, the history of payments made from their escrow account including the date, amount and payee, a statement of interest rates applied to their account, and other general inquiries. (R. 37-3, p.35). Neither party disputes that

this letter constituted a qualified written request for information under RESPA, 12 U.S.C. § 2605(e)(1)(B). [1] In a letter dated March 7, 2013, Ocwen responded to the Diedrichs' request with a form letter that set forth its policies regarding how and when it would respond to requests for information, but it did not directly respond with the information requested. *Id.* p.38. Ocwen sent another later dated March 30, 2013, stating that it would take another fifteen days, as permitted by RESPA, to review the inquiry. *Id.* p.39. Finally, on April 22, 2013, Ocwen sent the Diedrichs a letter stating that it could not identify a problem with their account and asking the Diedrichs to send another letter identifying which month and report they disputed, the explanation for the dispute, and all evidence showing that payment for the month was received on time or that the information reported was incorrect. *Id.* p.40.

Based on Ocwen's failure to respond to their request for information, the Diedrichs filed a complaint against Ocwen alleging violations of Wisconsin laws regarding mortgage loans (Wisc. Stat. § 224.77 and § 138.052) and the federal Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2605(e)(1) & (2), which sets forth in specific detail how a mortgage servicer such as Ocwen must respond to such an information request. The parties consented to disposition by the magistrate judge who granted Ocwen's motion to dismiss the claim under Wisconsin statute, § 138.052(7s)(a) and 12 U.S.C. § 2605(e)(1). That left in play RESPA § 2605(e)(2) and Wisconsin statutes §

---

[1] The parties refer to this alternatively as a borrower information request (Plaintiffs' brief, p.2) or a qualified written request for information (Defendant's brief, p.2).

224.77(1), and § 138.052(7) which became the subjects of dueling cross motions for summary judgment before a second magistrate judge.[2]

RESPA § 2605(e)(2) requires a lender to respond to a qualified written request for information from a borrower within a particular time frame and in a particular manner. Wisconsin statute § 224.77(1) essentially points back to the alleged RESPA violation by prohibiting mortgage bankers and brokers from violating any federal statute that regulates their practice. Wisc. Stat. § 224.77(1)(k). Both parties moved for summary judgment on these remaining claims, and the magistrate judge granted Ocwen's motion for summary judgment on all counts. The district court found that Ocwen's responses to the written inquiries were insufficient and therefore violated the RESPA requirements, but the court determined that the Diedrichs' allegations of damages were "conclusory and vague" and that they had "failed to come forth with any evidence that would connect their alleged [injury] to Ocwen's failure to respond to their qualified written request for information." Order at 14 (R. 59, p.14). The district court also dismissed the claim under Wisconsin law for the same reason, that is, that the Diedrichs failed to establish they were an aggrieved party as required under the Wisconsin statute. Order at 19 (R. 59, p.19). After filing an unsuccessful motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(6), the Diedrichs appealed and we affirm.

---

[2] Wisc. Stat. § 138.052(7) addresses permissible interest rates. The Diedrichs did not appeal the grant of summary judgment to Ocwen on this claim.

**II.**

**A.**

We begin, as we always must, with the question of standing. The jurisdiction of federal courts is limited to "Cases" and "Controversies" as described in Article III, Section 2 of the Constitution. There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

The plaintiff has the burden of establishing these elements and must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561. The Supreme Court elaborated as follows:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true.

*Lujan*, 504 U.S. at 561 (internal citations omitted). In short, for purposes of demonstrating whether the plaintiffs have standing to assert their claims before this court, we look to see whether they have set forth sufficient factual allegations supporting their claim that they suffered an injury in fact, that was fairly traceable to Ocwen's violation of the RESPA statute. *See Id*. at 560–61.

Whether raised by the parties or not, a court must assure itself that the plaintiff has standing, such that there exists a case or controversy as required by Article III of the Constitution. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Consequently, we asked the parties to submit supplemental briefing on the issue of standing in light of the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which was issued after the completion of briefing in this case. In *Spokeo*, the Supreme Court clarified the requirements for standing set forth in *Lujan* and noted that the injury must be concrete—that is "de facto … it must actually exist." *Spokeo*, 136 S. Ct. at 1548. The Court elaborated that "concrete" is not necessarily "tangible," but a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. at 1549.

In order to survive dismissal for lack of standing, the plaintiffs' complaint must contain sufficient factual allegations of an injury resulting from the defendants' conduct, accepted as true, to state a claim for relief that is plausible on its face. *Aschroft v. Iqbal* 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] The alleged injury

---

[3] The Court dismisses a claim *sua sponte* under Federal Rule 12(b)(6) using the same standards applied as if it had been a motion to dismiss from the

must be concrete and not just a procedural violation divorced from any harm. *Spokeo*, 136 S. Ct. at 1548.

The requirement of facial plausibility means "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted). Legal conclusions or bare and conclusory allegations, however, are insufficient to state a claim. *Iqbal*, 556 U.S. at 678, 680. Nevertheless, even with the heightened pleading requirements of *Iqbal* and *Twombly*, the pleading requirements to survive a challenge to a motion to dismiss remain low.

In this case, the injury requirement for standing overlaps with the injury requirement under the statute. In other words, as the court explained in *Spokeo*, the plaintiffs must have suffered a concrete injury in order to allege standing as a constitutional matter. *Spokeo*, 136 S. Ct. at 1548. And in this case, the statute does not grant statutory damages for bare procedural violations; it requires an actual injury. Consequently, there is no need to perform a separate *Spokeo* analysis to demonstrate whether a procedural injury alleged under the statute is sufficiently concrete to pass muster for Article III standing. The injury must be "actual," both for standing purposes and for purposes of the statute.

---

opposing party. *See, e.g., Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).

The RESPA section at issue, 12 U.S.C. § 2605, imposes a duty on loan servicers to respond to borrower inquiries.[4] The

---

[4] The statute, 12 U.S.C.A. § 2605(e)(2), states as follows:

**(e) Duty of loan servicer to respond to borrower inquiries**

   **(2) Action with respect to inquiry**

   Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

   **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

   **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

      **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

      **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

   **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

      **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

      **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

district court found that Ocwen "violated RESPA by failing to properly respond to the Diedrichs' qualified written request for information." Order at 19 (R. 59, p. 19). Ocwen does not dispute this portion of the court's finding. The district court, however, found that "the Diedrichs have failed to put forth evidence of damages stemming from the violation" *Id.* If they have no injury under the statute, then they fail the first part of the requirement for standing.

The remedy portion of the statute indicates that the statute was intended to redress *actual* damages caused by the failure of the loan servicer to provide information to the borrower. It states as follows:

> (f) Damages and costs
>
> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals
>
> In the case of any action by an individual, an amount equal to the sum of—
>
> (A) any actual damages to the borrower as a result of the failure; and
>
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f).

In this case, the Diedrichs alleged in their complaint the following:

34. As a direct result of the pattern of errors and negligence that culminated in Ocwen's failure to provide a timely answer to the Diedrichs' borrower inquiry, the Diedrichs have suffered damage to their credit. Additionally, they have been forced to pay Ocwen more money and higher interest rates than they were required by law or by the terms of their loan modification agreement to pay.

***

46. As a direct result of Ocwen's failure to keep the Diedrichs informed of their account information and reasonably investigate the errors in their account, the Diedrichs suffered damage to their credit. Additionally, they have been forced to pay Ocwen greater payments and a higher interest rate than that negotiated in their loan modification.

(R. 1, p.5 & 6-7).

These are allegations of a concrete injury stemming from the defendant's conduct and therefore the complaint meets the bare minimum requirement to allege standing and avoid dismissal on the pleadings. *See Twombly*, 550 U.S. at 570; *Spokeo*, 136 S. Ct. at 1548. The plaintiffs have met the minimal requirements for pleading even if it strikes us "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. In other words, they have sufficiently alleged an injury for purposes

of standing, even if those allegations are not sufficient to survive summary judgment.

Ocwen points us to a New York district court decision that considered the same section of RESPA (although a different subsection on the merits, the remedy section was the same) and concluded that the plaintiff's injury was a mere procedural violation unlinked to actual damages. *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016). In *Dolan*, the plaintiff alleged a violation of a different subsection of RESPA—section 2605, subsections (b) and (c), which require mortgage loan servicers to provide certain information in so-called "hello" and "goodbye" letters when a loan is transferred. The remedy section for a violation of that subsection is the same remedy section for this case, § 2605(f). The holding in *Dolan*, however, supports our holding here, as that court held that "the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability." *Dolan*, 2016 WL 4099109, at *5. Unlike in this case, however, the plaintiff borrower in *Dolan* made clear that his claims were based *solely* on the bare procedural statutory violations of sections 2605(b) and (c). His lawyer stated at oral argument that his client "gets to recover solely based on the violation of the RESPA statute that [he is] alleging" and "[he] do[es]n't have to [ ] show any injury beyond that." *Dolan*, 2016 WL 4099109, at *6 After *Spokeo*, this is clearly no longer the case; a plaintiff must allege a concrete injury for standing purposes.

In this case, however, the plaintiffs have alleged that they have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate. These are allegations of concrete injuries and as such are sufficient to

allege standing under *Twombly*, *Iqbal* and *Spokeo*. Whether the allegations are sufficient to overcome a motion for summary judgment is a different matter entirely.

**B.**

The Diedrichs have adequately alleged an injury for purposes of standing. This opens the door of the courtroom to them, but no more. Alleging injury for purposes of standing is not the same as submitting adequate evidence of injury under the statute to survive a motion for summary judgment. Upon a motion for summary judgment, we examine the record in the light most favorable to the Diedrichs and grant the motion if there are no genuine disputes of material fact and Ocwen is entitled to judgment as a matter of law. *Yahnke v. Kane Cty., Illinois*, 823 F.3d 1066, 1070 (7th Cir. 2016). It is the Diedrichs' burden to produce evidence sufficient to demonstrate a violation of the statute. "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The Diedrichs, therefore, had to come forward with evidence sufficient to support an award of actual damages to pursue their RESPA claims. *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011). In other words, taking the Diedrichs' facts as true, they must allege enough to demonstrate, not just that Ocwen was responsible for these injuries, but specifically, that Ocwen's failures to comply with RESPA section 2605(e)(2) caused their injury. We review the district court's decision to

grant a motion for summary judgment de novo. *Yahnke*, 823 F.3d at 1070.

The Diedrichs set forth a number of allegations about injury—that their credit was damaged, that they were denied credit, and that they were unable to seek refinancing. For these propositions, they cited to the deposition testimony of Daniel and Natalie Diedrich. Natalie Diedrich testified to her damages as follows:

> Q. What is your injury as a result of Ocwen's actions?
>
> A. As a result of Ocwen's actions over the whole time period?
>
> Q. Since the implementation of the loan modification.
>
> A. They have harmed my ability to take out any loans. They've ruined my chances of helping my kids through college.
>
> Q. Why are you unable to take out other loans?
>
> A. I'm unable to take out any loans due to this — my credit being destroyed.
>
> ***
>
> Q. And then beyond the credit reporting and your inability to take out loans, what are other injuries that you've sustained? It doesn't mean —a broad term meaning—
>
> A. Multiple. Financial burden, the whole having the legal issues, the stress of dealing with

this every single month. There's multiple things.

(R. 37-3 p.11) (Natalie Diedrich Dep. p.39:12- 41:8). Daniel Diedrich added the following:

We have things we need to fix on our home that I can't afford to fix now. We needed a new vehicle; we're paying high interest on that because of our credit rating. Our children's college funds that we're not able to help with. No vacation because I can't miss work, because I need to work because I don't get paid vacations … dealing with [my wife] because of what she's going through becomes very stressful on our relationship.

(R. 49-4, p. 5) (Daniel Diedrich Dep. p.15: 14-24).

Even taking all of the Diedrichs' facts as true, however, they simply have not alleged any causal connection between the injury they allege, including the claim for emotional damages, and Ocwen's failure to respond to the qualified written request for information, as opposed to the foreclosure on their loan, the loan modification process, or the litigation in general. In fact, Natalie testified that her negative credit reporting was due to the foreclosure action:

Q. Was your credit, the negative credit reporting, due to prior to [sic] the loan modification?

A. Due to them foreclosing on my home.

Q. Okay. Or the foreclosure action?

A. Yeah.

(R. 37-3 p.11) (Natalie Diedrich Dep. p.39:25-40:4). Likewise, her other testimony implied that the loan foreclosure process, the loan modification process, and the litigation were primarily to blame, or at the very least it was the "whole entire issue with Ocwen," *Id.* at 12, (Natalie Diedrich Dep. p.42:15-16). Even in its most helpful parts, Natalie Diedrich's testimony says nothing about how Ocwen's failure to provide the specific information requested under RESPA § 2505(e)(2) (as opposed to the lawsuit or the foreclosure) caused the injury:

> Q. So what are your damages based on? What calculation?
>
> A. Based on all the things I've been denied since this whole thing started. Based on the stress and everything that this whole entire issue with Ocwen has caused us over the last three years.
>
> ***
>
> Q. And then you indicate in your initial disclosures that you have $250,000 in distress and suffering. What is the basis for that amount?
>
> A. The basis is everything that Ocwen has put us through over the three years of this lawsuit.
>
> ***
>
> Q. Do you have any documentation that quantifies your $250,000 in distress and suffering?
>
> A. Yes.
>
> Q. What is that?

> A. There would be multiple things. Loan deni-
> als; like I said, being unable to support my two
> children in helping with their college education
> due to this; being unable to take out any loans
> to even repair our home or do anything since
> this all started. And, like I said, the stress and
> the having to constantly worry about this
> monthly, and to have to have an attorney con-
> tinuously for every day of my life.

(R. 37-3 pp.12-13) (Natalie Diedrich Dep. p.42:11-16, p.45:2-7, and p.45:16-p.46:3).

Daniel testified that the damages were for "missing work" and "stress" but that the number was not based on any specific actual expenses, but simply a number decided upon by himself, his wife, and their attorney. (R. 49-4, p. 5-6) (Daniel Diedrich Dep. p.16:18-20, p.17:22-p.18:14).

In fact, Ocwen's response to the January 2012 inquiry demonstrated that the Diedrichs' loan was reported as current. (R. 37-1, p.53). And so "Everything that Ocwen has put [them] through" is most likely to include the foreclosure proceedings, the loan modification process, and the lawsuit. The Diedrichs have not set forth any allegations of wrongdoing related to foreclosure proceedings or the loan modification process, and as the district court concluded, "simply having to file suit, however, does not 'suffice as a harm warranting actual damages.'" Order at 17 (R. 59, p.19) (citing *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010); *Konieczka v. Wachovia Mortgage Corp.*, No. 11 C 0071, 2012 WL 1049910, at *3 (N.D. Ill. Mar. 28, 2012)).

The *Catalan* case, upon which the Diedrichs rely heavily does not help them, as it says nothing about the manner and extent to which a plaintiff must link her damages to a covered entity's failure to respond to a qualified request for information. *Catalan,* 629 F.3d at 676. In *Catalan*, the district court did indeed find that the plaintiffs' self-reports of emotional distress stemming from the mortgage company's actions were sufficient to survive a motion for summary judgment. *Id.* at 696. But the court could not yet determine whether that emotional distress was sufficiently linked to the mortgage company's failure to properly respond to the request for information (as opposed to other actions of the mortgage company), as it left it for the district court to determine on remand whether there had, in fact, been a violation of 12 U.S.C. § 2605(e)(2). *Id.* at 690. ("we leave it to the district court to resolve on remand whether GMAC Mortgage satisfied its obligations to investigate and respond under 12 U.S.C. §§ 2605(e)(1)(A) and 2605(e)(2)"). *Catalan* does not, therefore, reveal what amount of evidence is sufficient to link an injury to a mortgage company's failure to respond properly to a qualified request for information. But whatever amount is required, surely a statement that the injury was caused by "everything that Ocwen has put us through over three years of this lawsuit," (R. 37-1, p. 12, Natalie Diedrich Dep. at 45:5-7) is not sufficient, particularly when Ocwen may have taken multiple actions that the Diedrichs might allege are damaging, but that might nevertheless be perfectly legal, such as initiating a foreclosure action, increasing interest rates, initiating a loan modification procedure, and the like.

The district court did not err in determining that, even accepting the Diedrichs' alleged factual claim that they suffered

damages, they failed to put forth evidence sufficient to establish every element that is essential to their claim and for which they would bear the burden of proof at trial. Specifically, they failed to demonstrate the essential element that they were injured specifically by Ocwen's inadequate response to a request for information under RESPA § 2605(e)(2).

## C.

For the same reasons, the claim under the Wisconsin statute goes down with the federal claim's ship. Wisconsin statute § 224.77(1) prohibits mortgage bankers and the like from engaging in specific activities. The Diedrichs point specifically to the following three subsections of the statute and argue that it was a violation for Ocwen to:

> (k) Violate any provision of this subchapter, ch. 138, or any federal or state statute, rule, or regulation that relates to practice as a mortgage banker, mortgage loan originator, or mortgage broker.

> (L) Engage in conduct that violates a standard of professional behavior which, through professional experience, has become established for mortgage bankers, mortgage loan originators, or mortgage brokers.

> (m) Engage in conduct, whether of the same or a different character than specified elsewhere in this section, that constitutes improper, fraudulent, or dishonest dealing.

Wis. Stat. Ann. § 224.77(1)(k)-(m). Pursuant to Wis. Stat. § 224.80(2), a person "aggrieved" by an act of a mortgage broker that is prohibited under Wisconsin Statute § 224.77(l) can

bring a cause of action for damages. Wis. Stat. § 224.80(2). The Wisconsin Supreme Court has clarified that an "aggrieved party" is "one having an interest … which is injuriously affected." *Liebovich v. Minn. Ins. Co.*, 751 N.W.2d 764, 775 (Wis. 2008).

For the very same reasons enunciated in our consideration of the RESPA claim, the district court properly concluded that the Diedrichs had not set forth sufficient evidence to overcome a motion for summary judgment on the state law claim. The Diedrichs failed to meet their burden of setting forth sufficient evidence, taken as true, to demonstrate an injury under Wisconsin law. The district court properly granted Ocwen's motion for summary judgment on this claim as well as the federal claim and therefore the entire judgment of the district court is AFFIRMED.