In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3040

DEBORAH WALTON,

*Plaintiff-Appellant,*

*v.*

EOS CCA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-00822-TWP-DML — **Tanya Walton Pratt**, *Judge.*

ARGUED FEBRUARY 27, 2018 — DECIDED MARCH 21, 2018

Before WOOD, *Chief Judge*, and BAUER and BARRETT, *Circuit Judges*.

BARRETT, CIRCUIT JUDGE. Deborah Walton sued EOS CCA, a debt collector, under the Fair Debt Collection Practices Act and the Fair Credit Reporting Act. Walton argues that EOS violated the former by failing to contact the creditor directly to "obtain[] verification" of her debt and the latter by failing to investigate disputed information. The district court concluded that EOS had discharged its obligation under both

statutes and entered summary judgment for EOS. We affirm
the district court's judgment.

## I.

In a letter dated October 11, 2014, AT&T notified Deborah
Walton that she owed $268.47 on her closed AT&T account. It
identified her account number as 119864170 and informed her
that failure to pay the bill "may cause your account to be re-
ferred to an outside collection agency." Walton did not pay
the bill, and on January 27, 2015, she received a debt-collection
letter from EOS CCA ("EOS"). The notice stated that she owed
AT&T $268.47 and that payment was expected "unless [she]
dispute[d] the debt." Because of an error in the records AT&T
sent EOS, the letter incorrectly identified Walton's AT&T ac-
count number as "864119170" when her actual account num-
ber is 119864170. AT&T had swapped the first three digits of
Walton's account with the second three in the information it
provided to EOS.

Walton contacted EOS to dispute that the debt belonged
to her. During a phone call with an EOS representative, Wal-
ton acknowledged that her name and mailing address in the
debt notice were correct, but she falsely denied that the last
four digits of her social security number matched those the
representative gave her in an attempt to confirm her identity.
Walton also wrote EOS a letter disputing the debt, in which
she asserted: "I do not own [sic] AT&T any money under the
account number listed above." After investigating, EOS sent
Walton a notice it characterized as "verification of your out-
standing debt." It told Walton that based on "a review of our
records," it had verified that her name, address, and the last
four digits of her social security number matched the debt re-
port it had received from AT&T. The verification letter also

provided additional information about the amount of the debt: it stated a balance of $268.47 and specified that AT&T had not added interest or collection costs to the account. As it had in its initial notice to Walton, EOS listed her AT&T account number with the three swapped digits reflected in the records AT&T had sent it.

EOS reported Walton's debt to two credit-reporting agencies, Experian and TransUnion. When it did so, it informed the agencies that the account was disputed. Walton wrote to Experian and TransUnion to dispute the debt, once in April and again in May. Each time, the agencies sent EOS a notice reflecting the complaint that Walton had registered. The first notice stated that Walton had insisted that the debt did not belong to her. This notice prompted EOS to double-check its own records, and it again concluded that Walton's name, address, and social security number matched the information it had received from AT&T. The second notice stated that Walton had asserted that EOS's debt-collection letter referred to account 864119170, when her correct account number was 119864170. After receiving this second notice, EOS asked Experian and TransUnion to delete Walton's debt record.

Walton sued EOS, claiming that it violated (1) the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (2006), by not verifying her debt with the creditor, AT&T, and (2) the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* (2010), by not reasonably investigating the disputed information. She alleges that she lost income, suffered emotional distress, and incurred substantial attorney's fees as a result of these violations. A magistrate judge recommended that the district court enter summary judgment in favor of EOS, and

the district court, overruling Walton's objections to the magistrate's report and recommendation, did so.

## II.

We begin with the FDCPA. Under that Act, if a consumer "notifies the debt collector in writing within the thirty-day period" that the consumer is disputing a debt notice, "the debt collector shall cease collection of the debt … until the debt collector obtains verification of the debt … and a copy of such verification or judgment … is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). The statute does not describe what it means to "obtain[] verification of the debt," and the definition of "verification" does not cast much light on the problem before us. "Verification" is "the authentication of truth or accuracy by such means as facts, statements, citations, measurements, or attendant circumstances." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2543 (1961). The question here, however, is what the debt collector is supposed to be verifying. Walton argues that § 1692(g) is about the accuracy of the underlying debt; she insists that the provision obligated EOS to contact AT&T to confirm whether the account number was hers and thus whether she really owed AT&T the money. EOS maintains that § 1692(g) is about the accuracy of its collection notice; it argues that the provision required EOS to confirm only that its notice to Walton matched AT&T's description of the debt and debtor.

EOS is right. The Act's stated purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It is both sensible and

consistent with that purpose to construe § 1692g(b) as requiring a debt collector to verify that its letters to the consumer accurately convey the information received from the creditor. The verification assures the consumer that the creditor actually made the demand the debt collector said it did and equips the consumer to evaluate the validity of the creditor's claim. It would be both burdensome and significantly beyond the Act's purpose to interpret § 1692g(b) as requiring a debt collector to undertake an investigation into whether the creditor is actually entitled to the money it seeks. Section 1692g(b) serves as a check on the debt-collection agency, not the creditor. We thus join other circuits in holding that the statute requires "nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173–74 (9th Cir. 2006).

With this in mind, EOS plainly satisfied § 1692g(b). It checked its records and confirmed that the Deborah Walton to whom it had sent a debt-collection letter was the same Deborah Walton identified by AT&T. It then mailed Walton a notice confirming that it had sent the demand for payment to the person AT&T identified and for the amount AT&T sought. The notice included AT&T's address, which served both to identify and provide contact information for the creditor. This verification armed Walton with the information she needed to "sufficiently dispute the payment obligation." *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1004 (8th Cir. 2011); *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 784 (6th Cir. 2014). Indeed, that is precisely what Walton did. She used the data she received from EOS—in particular, the erroneous account number—to

dispute her debt with Experian, TransUnion, and AT&T. And once she highlighted the precise source of her complaint—the account number—she succeeded in having the debt record deleted.

### III.

We turn next to the FCRA. Under that Act, when a credit-reporting agency notifies a debt collector of a disputed debt, the debt collector (called a "furnisher" under the statute) must "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry, but "summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). EOS's investigation was unquestionably reasonable. When EOS first heard from the credit-reporting agency, the report stated solely that Walton claimed the account did not belong to her. Based on this scant report, EOS conducted a reasonable investigation by verifying Walton's personal information with her EOS file on record. *See id.* After receiving the second credit-reporting agency notice, EOS learned that Walton challenged the accuracy of the account number associated with the debt. EOS responded to this information by asking the credit agencies to delete the adverse credit report. And they did. Nothing more was required of EOS.

### IV.

Walton's remaining arguments are also unpersuasive. She contends that EOS made false or misleading representations that violated both the FDCPA and the FCRA. The former requires debt collectors who communicate to a credit-reporting

agency to report if a debt is disputed, 15 U.S.C. § 1692e(8), and the latter prohibits debt collectors from furnishing information to consumer reporting agencies if they know or have "reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). EOS argues that we should not reach either issue because Walton did not raise either issue in her objection to the magistrate judge's report, *see Willis v. Caterpillar Inc.*, 199 F.3d 902, 904–05 (7th Cir. 1999). Even if these arguments were not waived, they fail for two reasons. First, EOS presented undisputed evidence that it *did* report the debt as disputed, thereby complying with both Acts' provisions in §§ 1692e(8) and 1681s-2(a)(1)(A). Second, the FCRA does not provide a private right of action for violations of § 1681s-2(a)(1)(A). *See* 15 U.S.C. § 1681s-2(c); *Purcell v. Bank of America*, 659 F.3d 622, 623 (7th Cir. 2011).

Finally, Walton brings two procedural challenges. She first objects to the consolidated briefing for cross-motions for summary judgment and argues the magistrate judge erred in denying her motion to strike EOS's combined motion and response. Permitting consolidated briefing on cross-motions for summary judgment is well within the judge's discretion. As for Walton's second procedural challenge, she complains that the district court, in considering her objections to the magistrate's report and recommendation, stated that "[Ms. Walton] does not cite any specific content in the ten pages of that exhibit and develops no arguments therefrom. She does not specify any error in the Report that these excerpts identify." Walton maintains that the district court's statement runs afoul of *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999), where we interpreted "Rule 72(b)'s requirement of specific, written objection [to a magistrate's report] to require a litigant to specify each issue for which review is sought and not the

factual or legal basis of the objection." Walton has taken the district court's statement out of context. The district court made a descriptive observation about Walton's objection to the exhibit in question, but it did not penalize Walton for her failure to develop a factual or legal argument. On the contrary, the district court clearly reviewed each of Walton's objections to the report under the proper *de novo* standard, 28 U.S.C. § 636(b)(1). Walton's objection is meritless.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.