> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2019[*]
Decided February 11, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2877

| | |
|---|---|
| DEBORAH WALTON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:16-cv-3302-WTL-DPL |
| BMO HARRIS BANK N.A., and EQUIFAX, INC., | William T. Lawrence, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Deborah Walton sued BMO Harris Bank and Equifax under the Fair Credit Reporting Act and the Real Estate Settlement Procedures Act. She alleged that BMO Harris furnished inaccurate information to credit reporting agencies, including Equifax, and that Equifax reported this information to other creditors. The district court entered summary judgment in favor of the defendants. Because we agree with the district court

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

that Walton lacked sufficient evidence to establish a genuine dispute of material fact about either defendant's liability, we affirm.

We review the district court's grant of summary judgment de novo, viewing the facts and drawing reasonable inferences in Walton's favor. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016). In April 2006, Walton obtained a home equity loan secured by a second mortgage on her Indiana home. The loan's term was twenty years, split between a ten-year "draw period" and a subsequent ten-year "repayment period." During the draw period, the loan functioned as a revolving line of credit, and Walton was responsible for monthly payments covering only the accrued interest and any credit insurance premium. In April 2016, the loan entered the repayment period, and Walton became responsible for monthly payments consisting of a fixed principle payment plus interest. Before the loan entered its repayment period, BMO Harris acquired the loan through a series of mergers with other banks.

Soon after the repayment period began, BMO Harris notified the three major credit reporting agencies that Walton had stopped making full payments. After learning that a loan delinquency was appearing on her credit report, Walton contacted the credit reporting agencies, including Equifax, to dispute the information. Beginning on August 30, 2016, Walton contacted Equifax at least three times to dispute the negative information on her credit report.

In response, Equifax sent automated credit dispute verifications to BMO Harris. The bank received seven such requests from the three credit reporting agencies within approximately one year. (Walton contends that there were more, but the record substantiates only seven.) Each time, BMO Harris reviewed its records, confirmed that Walton was delinquent on the loan, and provided the most recent current-balance and past-due figures. Equifax did not prepare any consumer reports concerning Walton between August 30, 2016 and January 30, 2018. (Walton disputes this but has provided no evidence to the contrary.) Walton also asserts that she sent two letters and one email to BMO Harris requesting information about her loan. BMO Harris says that it never received any request, and Walton admits she did not send the letters to the address listed on her loan papers.

Dissatisfied with Equifax's and BMO Harris's responses to her various complaints and requests, Walton sued in federal court. Her amended complaint alleges that Equifax violated the Fair Credit Reporting Act by failing to follow reasonable procedures to assure maximum possible accuracy when preparing her credit report,

15 U.S.C. § 1681e(b), and by neglecting to conduct a reasonable reinvestigation of the information she disputed, *id.* § 1681i(a). She also alleges that BMO Harris violated the Fair Credit Reporting Act by failing to properly investigate the disputes it received from the various credit reporting agencies, *id*. § 1681s-2(b), and the Real Estate Settlement Procedures Act by ignoring her qualified written requests for information, 12 U.S.C. § 2605. The district court entered summary judgment for the defendants on all of Walton's claims, explaining that Walton failed to adduce sufficient evidence that the information about her loan delinquency was inaccurate or that she had suffered actual damages caused by the conduct of either defendant. Walton appeals.

Walton first argues that Equifax failed to follow reasonable procedures to ensure maximum possible accuracy in preparing her credit report, *see* 15 U.S.C. § 1681e(b), and willfully and negligently failed to conduct a reasonable investigation of her dispute and delete the inaccurate information from her account, *see id.* § 1681i(a). Although the reasonableness of a credit reporting agency's procedures under § 1681e(b) is not typically a summary-judgment question, Equifax cannot be liable as a threshold matter if it did not report inaccurate information. *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). Here, Equifax reported only the information BMO Harris provided, and Walton offers no evidence showing that BMO Harris's account of her payment history or the amounts owed is inaccurate. Her unsupported assertions are not sufficient to contradict the evidence in the record. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010).

Walton also lacked evidence of another necessary element of her claim against Equifax: damages. *See Sarver*, 390 F.3d at 971; *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005). In her complaint and summary-judgment filings, Walton vaguely asserted that she lost out on future income and earnings, suffered injury to her financial reputation, and experienced unspecified emotional damages. But although such allegations might suffice to state a claim, without concrete evidence, they do not raise a genuine issue of material fact as to whether Equifax's alleged misconduct caused actual harm. *See Johnson*, 325 F.3d at 901; *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001) (recognizing "a high threshold for proof of damages for emotional distress"). Walton failed to submit such evidence.

Furthermore, as we have said before, the Fair Credit Reporting Act is not a strict liability statute; Equifax was not required to reinvestigate until it received notice of a possible error. *Ruffin-Thompkins*, 422 F.3d at 608. Equifax had no reason to believe that BMO Harris was an unreliable source, so its potential liability began only after Walton

first disputed the information in her credit report. *See id.* But each denial of credit that Walton attributes to the negative information in her credit report occurred before her first inquiry. On appeal, Walton now alleges that she also received letters in January 2017 (after she disputed her credit report) from two retailers decreasing the credit limits of her accounts. But Walton cannot present new evidence or arguments on appeal that she did not present to the district court. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Moreover, Walton's unsworn description of the letters, which she has not provided, are insufficient to survive summary judgment. *See Johnson*, 325 F.3d at 901.

We next turn to Walton's claims against BMO Harris, the furnisher of the allegedly inaccurate information.[1]  She first argues that the bank failed to conduct a reasonable investigation after learning that she was disputing the information about her loan in her credit report. Upon receiving notice from the credit reporting agencies, BMO Harris was obligated to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). Ordinarily, "[w]hether the furnisher's investigation is reasonable is a factual inquiry, but 'summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.'" *Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018) (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

On the record here, BMO Harris's investigation was reasonable. *See Walton*, 885 F.3d at 1028. Upon receipt of each automated credit dispute verification, BMO Harris reviewed the terms of Walton's loan and her repayment history. It confirmed that Walton stopped making payments during the repayment period and that the information it supplied to the agencies was correct. Although Walton argues that BMO Harris did not conduct an investigation, she has no evidence to counter the bank's. She points to a BMO Harris representative's inability to calculate her monthly payments on the spot during his deposition (without having access to the applicable interest rates). But this has nothing do with whether BMO Harris reasonably investigated the verification requests it received from the credit reporting agencies.

Next, Walton argues that BMO Harris violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), by failing to promptly respond to a qualified

---

[1]  Walton cannot bring an individual claim against BMO Harris for transmitting inaccurate information; only the Federal Trade Commission (or a state agency) may bring such a claim. *See Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011). Therefore, Walton is limited to challenging the bank's investigation procedures.

written request for information. The parties dispute whether Walton ever sent a qualified written request and whether BMO Harris ever received one, but in any case, this claim fails because Walton again failed to show that she suffered actual damages, *see id.* § 2605(f)(1); *Diedrich*, 839 F.3d at 592. The only specific injury Walton identified at summary judgment was her inability to obtain a mortgage just three business days after she says she sent her first information request. BMO Harris—if it did receive a qualified written request—had five days to acknowledge receipt of the request, 12 U.S.C. § 2605(e)(1)(A), and thirty days to investigate and respond to the letter, *id.* § 2605(e)(2). Thus, the mortgage rejection cannot be evidence of damages resulting from a failure to reasonably respond even if a response would have required a correction to Walton's account. *Id.* § 2605(e)(2)(a).

Walton also raises a host of other meritless arguments. She contends that BMO Harris violated the Real Estate Settlement Procedures Act by failing to disclose "[w]hen the [l]oan [a]mount and [l]oan [t]ype [c]hanged." But Walton did not develop this claim before the district court, so it is too late to raise it now. *See Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008). In any event, the Act does not require such a disclosure. *See* 12 U.S.C. §§ 2605(b), 2205(c) (requiring notice to a borrower when a loan is transferred to a new lender or servicer). She also argues that the district court erred in summarizing the factual background of her case and that the court docketed her exhibits incorrectly. But what Walton frames as factual errors are mostly repetitions of her attacks on the court's legal conclusions. Further, Walton does not suggest that any potential docketing error led to the omission of any evidence from the record, so there is no basis for concluding that she was harmed.

AFFIRMED