NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 17, 2020
Decided December 10, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1418

| | |
|---|---|
| SCHERITA L. DELONEY,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Northern District<br>of Indiana, Hammond Division. |
| *v.* | No. 2:18-cv-352 PPS SLC |
| ANDREW M. SAUL,<br>Commissioner of Social Security,<br>    *Defendant-Appellee*. | Philip P. Simon,<br>*Judge*. |

**ORDER**

Scherita Deloney applied for Disability Insurance Benefits, asserting that she was unable to work because of arthritis in both knees, among other impairments. An administrative law judge concluded that, although Deloney could no longer perform her past work, she was not disabled because she still could perform some sedentary work with restrictions. The district court upheld this decision. Because Deloney waived one of her arguments and substantial evidence supports the ALJ's decision, we affirm.

Deloney has had knee problems for decades. She had surgery on her right knee in 1991 and in 2001. In 2014, her primary care doctor, Isidora Nantes, diagnosed her with severe osteoarthritis in both knees. Nonetheless, she continued to work as a general laborer until April 2015, when her knee impairments rendered her unable to perform her job.

Deloney visited an orthopedic surgeon numerous times during the second half of 2015. He diagnosed her with advanced degenerative arthritis in both knees. During the surgeon's initial exam, Deloney demonstrated a full range of motion except that she exhibited slightly reduced flexion (the ability to bend the knee) in her left knee. During later visits Deloney continually demonstrated a reduced ability to flex her knees, but her ability to straighten her leg (extension) varied, ranging from no reduced extension to extension lacking 15 degrees (meaning 15 degrees short of full extension (zero)). Her surgeon consistently recommended total knee replacement but Deloney declined, opting for conservative treatments like physical therapy and injections. During the summer of 2015, this treatment provided a slight improvement in her condition, but by August she reported to Dr. Nantes that she could not bend her knees.

During numerous examinations by Dr. Nantes between June 2015 and February 2017, Deloney continually exhibited reduced flexion in both knees. These measurements did not vary significantly and were consistently worse than those taken by her surgeon and her physical therapist. In November 2016, Dr. Nantes opined that Deloney could not walk even a single city block without rest or severe pain. Dr. Nantes also wrote a letter to the Social Security Administration in February 2017, stating that Deloney was disabled and unable to work and that, if employed, she would be off task 20% of the time and miss a minimum of 3 days per month due to limitations on her ability to sit and stand.

Dr. Adela Perez performed a consultative exam in September 2015 and found that Deloney had a full range of motion except for mildly reduced flexion in both knees. That month a medical consultant, Dr. R. Fife, evaluated Deloney's records and found that her arthritis did not meet or medically equal the agency's definition for a per se disability under § 1.02 for a major dysfunction of joints. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. The agency denied Deloney's claim, and she requested reconsideration. A second medical consultant, Dr. M. Brill, examined the record and concurred with Dr. Fife that Deloney's arthritis did not meet or medically equal § 1.02.

After the agency denied Deloney's application on reconsideration, she sought a hearing before an ALJ. There, Deloney testified that her arthritis precluded her from standing longer than 5 minutes or sitting longer than 20 minutes. An internist, Ashok

Jilhewar, testified as a medical expert. He opined that Deloney's arthritis and obesity were both severe impairments. He testified that without "documentation of ineffective ambulation . . . [he] cannot state she meets or equal[s] 1.02(a)." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b). But later, in response to a question by Deloney's counsel, Dr. Jilhewar testified, "By the flexion part, by the flexion contracture, my opinion, as of that date, the documentation will be equaling 1.02(a)." The ALJ sought clarification, and Dr. Jilhewar stated that if there was evidence of flexion contracture (the inability to fully extend the leg) such that "extension was equal to a more than 15 degrees . . . that would have been so-called equaling 1.02(a)." The ALJ clarified that he was "saying it doesn't do that" and Dr. Jilhewar confirmed, "No."

The ALJ concluded that Deloney was not disabled. He determined that, though Deloney had severe impairments, none met or equaled the criteria of a listing. The ALJ then found that Deloney had the residual functional capacity to perform sedentary work with restrictions. In making these findings, the ALJ assigned little weight to Dr. Nantes's letter stating that Deloney would be off task for 20% of the workday and would miss 3 days of work per month. And he did not acknowledge Dr. Nantes's November 2016 opinion that Deloney could not walk a full block. Instead, the ALJ relied upon the opinions of Dr. Jilhewar and Dr. Brill. Both opined that Deloney had certain postural limitations (unable to climb ladders, ropes or scaffolds, kneel, or crawl) but otherwise retained the capacity to perform at least sedentary work. Based on this residual functional capacity, and the testimony of a vocational expert, the ALJ concluded that Deloney could perform a significant number of jobs in the national economy. The Appeals Council denied Deloney's request for review, and Deloney sought judicial review.

A magistrate judge recommended upholding the decision, explaining that the ALJ did not err in finding that Deloney's impairments did not equal any listing and in declining to give Dr. Nantes's 2017 letter controlling weight. The magistrate judge acknowledged that the ALJ also should have discussed Dr. Nantes's 2016 opinion but concluded that considering it would not have led to a different outcome. Deloney objected to the report and recommendation as to the ALJ's listing decision and her treatment of Dr. Nantes's 2017 letter. The district court adopted the magistrate judge's recommendation and upheld the denial of benefits.

This court will uphold the ALJ's decision if supported by substantial evidence, *see* 42 U.S.C. § 405(g), or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

On appeal, Deloney first argues that, though she does not "meet" the criteria for listing § 1.02(A), the ALJ failed to properly assess whether she could "equal" the listing. Section 1.02(A) establishes a per se disability where the knee exhibits a gross anatomical deformity—along with pain, stiffness, and limited motion—resulting in an inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(A). Deloney would show "medical equivalence" if her impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). She could do so by offering "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." *Id.* § 404.1526(b)(1)(ii). When evaluating medical equivalence, the ALJ must identify the relevant listing and give more than a perfunctory analysis. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Here, the ALJ's explanation was sufficient. He determined that Deloney does not meet the criteria of § 1.02(A) because the record contained no evidence demonstrating gross anatomical deformity or an inability to ambulate effectively—both requirements under the listing. In the step-three discussion, the ALJ also stated that Deloney's impairment did not equal the criteria of § 1.02(A) without elaborating or citing evidence relevant to impairments of possibly equivalent significance—but he did not have to separately discuss equivalence. *See* Social Security Ruling (SSR) 17-2p, 82 Fed. Reg. 15,263, 15,265 (Mar. 27, 2017) (an ALJ need not articulate specific evidence supporting a finding that an impairment does not medically equal a listed impairment; a simple statement of non-equivalence will suffice). The balance of the decision nonetheless cites ample evidence supporting the finding that her impairments did not equal § 1.02(A). The ALJ's decision relies in part on the opinion of two doctors—Dr. Jilhewar and Dr. Brill—who opined that no evidence in the record, including the extension measurements that Deloney cites, shows equivalence with § 1.02(A). The ALJ also provided an extensive explanation for why Deloney's impairments were not as debilitating as alleged: physical examinations consistently showed good stability, a normal gait, and no need for an assistive device.

Deloney also contends that the ALJ overlooked evidence of medical equivalence by failing to consider a portion of Dr. Jilhewar's testimony which, she argues, supports a finding that her inability to fully extend her knee was as medically significant as an inability to ambulate (a listing criterion under § 1.02(A)). Part of Dr. Jilhewar's somewhat confusing testimony could be read as opining that Deloney's inability to fully extend her knee created equivalence with the criteria of § 1.02(A). Specifically, in response to a question from Deloney's attorney, he stated, "By the flexion part, by the flexion contracture, my opinion, as of that date, the documentation will be equaling 1.02(a)." But he ultimately stated unequivocally that she did not equal a listing. Upon hearing the ambiguous statement, the ALJ solicited clarification. Dr. Jilhewar then

testified that an impaired flexion contracture of sufficient severity can equal listing § 1.02(A), specifically when "extension was equal to a more than 15 degrees . . . that would have been so-called equaling 1.02(a)." The ALJ then asked Dr. Jilhewar if the record evinced such a lack of extension, and he replied that it did not. Therefore, the ALJ did not overlook a medical opinion that her impairment equals the listing.

Deloney further argues that two extension measurements of 15 degrees in the record meet Dr. Jilhewar's definition of flexion contracture and thus demonstrate equivalence as he defined it. Like other portions of Dr. Jilhewar's testimony, his explanation of flexion contracture was not entirely clear. But the reading advanced by Deloney is unlikely. By saying "equal to a more than 15 degrees," he likely meant that, to equal § 1.02(A), the extension deficit must be greater than 15 degrees. Only the latter interpretation is consistent with Dr. Jilhewar's unequivocal opinion that she does not equal the listing based on flexion contracture. Further, Deloney had the burden of proving disability at step three. She was represented by counsel, and her attorney had the ability to clarify or develop the record further on this point with the expert. *See Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017) (court presumes that claimant represented by counsel made her strongest case). Remand to reconsider medical equivalence is not warranted.

Deloney next argues that the ALJ erred by not affording controlling weight to Dr. Nantes's 2017 letter stating that she would be off task for 20% of the workday and miss 3 days of work per month because of impairments greatly limiting her ability to sit and stand. At the time Deloney filed her application, a treating physician's opinion was entitled to controlling weight if well supported by medical findings and consistent with the record. *See* 20 C.F.R. § 404.1527(c)(2). But we will defer to an ALJ's decision to give a treating physician's opinion less than controlling weight if the ALJ considers the factors listed under § 404.1527(c) and minimally articulates his reasoning. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (citing *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008)).

The ALJ adequately explained why he discounted the treater's letter for being inconsistent with the record. *See* 20 C.F.R. § 404.1527(c)(4). Deloney argues that Dr. Nantes's letter stating that she had a limited ability to sit and stand was based on her debilitating knee pain and that the ALJ ignored evidence of her pain and decreased range of motion. But, when discounting the letter, the ALJ did confront her knee pain by citing evidence that it was not as debilitating as Deloney alleged, and it had been successfully managed in the past through physical therapy and injections. And, elsewhere in his decision, the ALJ cited evidence that demonstrated an ability to perform various physical activities effectively despite her pain. This included a normal ability to stand on her toes and heels, stand on one leg, and squat. Even if the managed

pain alone might not demonstrate the inconsistency of Dr. Nantes's letter about limitations sitting and standing with the balance of the record, the additional evidence cited by the ALJ of her physical capabilities despite this pain substantiates the conclusion.

Deloney replies that the ALJ relied on out-of-date evidence, contradicted by later findings. Though the evidence demonstrating effective pain management and her physical capabilities came from exams in 2015, Dr. Jilhewar—whose opinions the ALJ assigned considerable weight—testified that Deloney's condition had not substantially changed since then. Deloney cites two visits to Dr. Nantes in 2017 for which the reports note, without explanation, that Deloney "could not walk." Deloney contends that measurements taken during these visits, demonstrating a reduced range of motion, substantiate that her impairments worsened. But these measurements did not differ from those taken by Dr. Nantes in 2015, when her pain was effectively managed and she could perform physical activities normally. *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) ("A treating physician's medical opinion is entitled to controlling weight if it is *well supported* by objective medical evidence." (emphasis added)). Because of the consistency between the measurements, the 2017 measurements do not constitute "new, significant medical diagnoses" that would make reliance on previous exams improper. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).

As further support for Dr. Nantes's letter stating that her impairments limited the ability to stand and sit, Deloney points to measurements taken in 2015 showing a limited range of motion that she claims demonstrates an inability to walk. But that does not address standing or sitting. Even so, the ALJ confronted this evidence and found it was outweighed by contemporaneous exams showing an ability to ambulate without assistance, a steady gait, and good lateral stability and strength. The ALJ thus more than minimally articulation his reasons for discounting Dr. Nantes's letter. This court cannot reweigh that evidence. *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

Deloney also faults the ALJ for altogether failing to discuss Dr. Nantes's 2016 opinion that Deloney could not walk even one city block without severe pain or rest. But she waived appellate review of this argument by not objecting to the magistrate judge's report and recommendation on this basis. *See* FED. R. CIV. P. 72. A litigant must object separately to every issue she wishes the district court to review. *Walton v. EOS CCA*, 885 F.3d 1024, 1029 (7th Cir. 2018) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)). Although Deloney argues that she objected generally to the magistrate judge's findings regarding both Dr. Nantes's 2017 letter and 2016 opinion, she never mentioned the 2016 opinion. This did not suffice to point the district judge to the error she now raises.

Because none of Deloney's challenges to the ALJ's decision has merit and that decision was supported by substantial evidence, we affirm the district court's order.

AFFIRMED