In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1985

ERIC MAINS,

*Plaintiff-Appellant,*

*v.*

CITIBANK, N.A., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:15-cv-00036-SEB-TAB — **Sarah Evans Barker**, *Judge.*

ARGUED NOVEMBER 2, 2016 — DECIDED MARCH 29, 2017

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. Eric Mains has been battling the impending foreclosure of his home for quite some time. Most recently, he brought an action in federal court raising various state and federal law theories, related primarily to alleged fraudulent activity by the defendants. But the state courts resolved these matters long before he turned to the federal

court. Mindful of our limited jurisdiction and the need to re-
spect the finality of state-court judgments, we affirm the dis-
trict court's dismissal of this case.

**I**

Mains executed a mortgage on his home with Washington
Mutual ("WAMU") in December 2006 and made timely pay-
ments for a little more than two years. WAMU failed in Sep-
tember 2008, and the Federal Deposit Insurance Corporation
("FDIC") became its receiver. Chase Bank ("Chase") pur-
chased WAMU's loans and loan commitments, including
Mains's mortgage and note. Mains received notice in May
2009 that Chase was the servicer of his loan. (Chase would
later assign the mortgage and note to Citibank in 2010.)

Around the time of WAMU's demise, Mains began falling
behind on his mortgage payments. He requested loan modi-
fications from Chase three times in early 2009 and discontin-
ued his mortgage payments altogether in March of that year.
Chase's law firm, Nelson & Frankenberger, P.C. ("Nelson"),
sent Mains a default and acceleration notice in June 2009. On
April 20, 2010, Citibank (by now the holder of the paper) filed
a mortgage foreclosure action in the Circuit Court of Clark
County, Indiana. Citibank filed a motion for summary judg-
ment in August 2010, but it withdrew that motion in Novem-
ber 2010 because it was under investigation for its alleged im-
proper foreclosure practices. On February 11, 2013, Citibank
re-filed its motion, and the state court granted summary judg-
ment for Citibank on May 3, 2013. Mains appealed on Septem-
ber 12, 2013, contending that Citibank was not the proper
party to foreclose on the loan and that it had committed fraud
because it was not the real party in interest, yet it instructed
its employees fraudulently to sign documents. The Indiana

Court of Appeals affirmed the trial court's order, and the Indiana Supreme Court denied Mains's motion for transfer on January 22, 2015.

Mains then turned to the federal courts, filing a rambling, 90-page complaint on March 20, 2015. He alleged that he had discovered new evidence of fraud that he could not have presented to the state court—specifically, the existence of previously undisclosed consent judgments, parties in interest, and evidence of robo-signing. He also claimed to have rescinded his mortgage on February 27, 2015. In addition to Chase and Citibank, the complaint named a host of others: Cynthia Riley, a former employee of WAMU; Black Knight Financial Infoserv ("Black Knight"), a computer software and form provider for Chase; Nelson & Frankenberger, Citibank's counsel; Bose McKinney, Citibank's appellate counsel in the Indiana foreclosure judgment; and Wyatt, Tarrant & Combs ("Wyatt"), Chase's non-litigation counsel. The federal complaint alleged violations of a number of federal statutes: the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1631–1651, and "Regulation Z," 12 C.F.R. § 226; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692–1692p; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Mains also brought claims under Indiana Code § 32-30-10.5 (relating to foreclosure prevention agreements), and state tort law for negligent or intentional infliction of emotional distress, negligent misrepresentation, common law fraud, and negligence.

The district court found that Mains's claims would effectively nullify the state-court judgment if resolved in his favor, and dismissed for lack of subject matter jurisdiction under the

*Rooker-Feldman* doctrine. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). We agree with that court that Mains is, in effect, asking us to overturn the state court's judgment—an action we have no jurisdiction to take. The district court indicated that its dismissal was with prejudice. Because it rests on a limitation on the federal court's jurisdiction, however, we modify it (with minor exceptions described below) to be without prejudice.

## II

The crux of Mains's argument on appeal is that the district court erred in dismissing his claims pursuant to *Rooker-Feldman* because he discovered evidence of fraud that was not known to the state court, and it would be unfair in light of that to hold him to the state court's judgment.

The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced. *ExxonMobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). It ensures that lower federal courts do not exercise appellate authority over state courts. Claims that directly seek to set aside a state-court judgment are *de facto* appeals that trigger the doctrine. *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016). But even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely enough related to a state-court judgment. *Id.*

Another way of expressing the same point is to ask whether the federal plaintiff is alleging that his injury was

caused by the state-court judgment. *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014). If the claim alleges an injury independent of the state-court judgment that the state court failed to remedy, *Rooker-Feldman* does not apply. *Sykes*, 837 F.3d at 742. "In other words, [for *Rooker-Feldman* to apply] there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Id.* *Rooker-Feldman* thus applies where the plaintiff seeks relief that is tantamount to vacating the state judgment. *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004). But if the suit does not seek to vacate the judgment of the state court and instead seeks damages for independently unlawful conduct, it is not barred by *Rooker-Feldman*. *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014).

Even if *Rooker-Feldman* does not bar a claim, when there is a prior state-court judgment that appears to cover the same transaction or the same issues as the later federal case, the possibility exists that *res judicata* may apply. In Indiana, as is commonly the case, *res judicata* is an affirmative defense. When the earlier judgment was rendered by a state court, the Full Faith and Credit Statute, 28 U.S.C. § 1738, "requires [federal] courts to give a state court judgment the same preclusive effect it would have in state court." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). In this case, we look to Indiana law to ascertain the preclusive effect of the earlier state-court judgment.

Indiana, like most states, recognizes both claim preclusion and issue preclusion. *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013); *Miller Brewing Co. v. Ind. Dept. of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009). Indiana's Supreme Court has said that "[i]n general, issue preclusion bars subsequent litigation

of the same fact or issue that was necessarily adjudicated in a former suit." *Miller*, 903 N.E.2d at 68. Indiana courts follow federal precedents in applying issue preclusion (also commonly referred to as collateral estoppel). *Id.* The courts ask two questions: "(1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case." *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 705 (Ind. Ct. App. 2005).

In order for issue preclusion to apply under Indiana law, the rendering court's decision must be final. Indiana courts rely on the American Law Institute's Restatement (Second) of Judgments, section 13, in making that determination. *Miller*, 903 N.E. 2d at 68; *Johnson v. Anderson*, 590 N.E.2d 1146, 1149 (Ind. Ct. App. 1992). As we put it in *Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009), the Indiana courts use a holistic analysis of finality; they focus "on the nature of the judgment itself and specifically whether it is sufficiently firm and non-tentative." Under Indiana law, a foreclosure judgment is an immediately appealable final judgment for the purpose of preclusion. See *Bahar v. Tadros*, 123 N.E.2d 189, 189–90 (Ind. 1954).

## A

Reading through the verbiage of Mains's filings, we are left with the impression that the foundation of the present suit is his allegation that the state court's foreclosure judgment was in error because it rested on a fraud perpetrated by the defendants. Mains wants the federal courts to redress that wrong. That is precisely what *Rooker-Feldman* prohibits, however. If we were to delve into the question whether fraud tainted the state court's judgment, the only relief we could

give would be to vacate that judgment. That would amount to an exercise of *de facto* appellate jurisdiction, which is not permissible. Mains's remedies lie in the Indiana courts. Indiana allows a party to file for relief from judgment based on newly discovered evidence or on the fraud or misrepresentation of an adverse party, either through a motion or through an independent action. See Ind. R. Trial P. 60(B). The state's courts are quite capable of protecting their own integrity.

Mains's claim under RESPA, 12 U.S.C. §§ 2601–2617, is somewhat more complex. He seeks an accounting of payments to determine whether Chase improperly charged late fees. In that connection, he asserts that the defendants should not have proceeded to collect on the note before conducting a proper accounting. That theory, too, is barred by *Rooker-Feldman*. In effect, it is just another way to try to undo the state court's foreclosure judgment. To the extent that Mains may be arguing that he was charged improper late fees some time in 2008 or 2009, long before the state court acted, his claim would be independent of the state court's judgment. See *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015). But that does not help him, because the Indiana court has already determined the amount due, inclusive of late fees, and we must give preclusive effect to its decision on these issues. At best, part of his RESPA claim is beyond our jurisdiction, because of *Rooker-Feldman*, and the remainder has been definitively resolved by the state courts, and so must be dismissed on the merits.

## B

Mains also claims that Chase and Citibank violated TILA, 15 U.S.C. §§ 1631–1651, by misrepresenting payments due and his obligations to them. He alleges that the defendants

failed to respond to his February 2015 rescission, and that
they provided false information, mishandled payments, and
failed to disclose information prior to foreclosure because
Citibank was not the proper holder and servicer of the loan.
Again, these claims could be sustained only by disregarding
or effectively vacating the state judgment's judgment of fore-
closure. The state court determined the amounts due and
Mains's obligation to pay them, and a lower federal court is
not empowered to second-guess that decision. Insofar as
Mains alleges he had the right to rescind in 2015, he also runs
into *Rooker-Feldman*. The existence of such a right is possible
only if the state court's prior foreclosure judgment is set aside.

If Mains is making the more modest procedural claim that
he was injured by one or more defendants' failure to respond
to his "rescission" in a timely manner, we would affirm for a
different reason. It is clear from the pleadings that he executed
his mortgage in 2006, nearly nine years before his alleged re-
scission. This is long past the maximum three-year time limit
allowed by TILA for a rescission, see 15 U.S.C. § 1635(f). It also
assumes, counterfactually, that he still had a mortgage to re-
scind as of February 2015. By then, he had exhausted all state
appeals of his foreclosure judgment, which resolved his obli-
gations under the mortgage and substituted the court's judg-
ment for the note and lien. In short, even if aspects of the TILA
claim fall outside the scope of *Rooker-Feldman*, it survives the
jurisdictional bar only to be dismissed on the merits.

## C

Mains also alleges that he sustained injuries in the form of
attorney's fees and clouding of title when he had to defend his
interests, and that a RICO conspiracy by the defendants mis-
led the state trial court. These theories are also barred by

*Rooker-Feldman*, because they are dependent upon and inter-woven with the state-court litigation. This part of the case is similar to *Harold v. Steel*, in which we held that a plaintiff's FDCPA claims premised on false statements were barred by *Rooker-Feldman*. 773 F.3d 884, 886–87 (7th Cir. 2014). We acknowledged in *Harold* that there are situations in which a defendant's violation of federal statutes during ongoing state-court litigation could cause a loss independent of the out-come, such as in the case in which a debt collector violates the venue portion of the FDCPA statute and inflicts an injury by forcing someone to travel to litigate. But in *Harold*, the claims were barred because "[n]o injury occurred until the state judge ruled against [Appellant]. The need to litigate was not a loss independent of the state court's decision; costs of litiga-tion were inevitable whether or not [Appellee] was telling the truth about his client's rights." *Id.* The same is true here.

## D

Next, Mains argues that the defendants violated the FDCPA, 15 U.S.C. § 1692–1692p, by using false, deceptive, or misleading representations or means to collect money and at-tempt to seize his property. He alleges that Chase and Wyatt in particular ignored his rescission, stated their intent to fore-close, and tried to collect a debt that no longer existed due to his rescission. But, as we noted above, Mains was no longer able to rescind. In addition, the debt that they tried to collect was the one authorized by the state foreclosure judgment. Mains's injury (if any) and his FDCPA claims against Chase and Wyatt for their collection attempts after his "rescission" are therefore not independent of nor extricable from the state-court judgment. The district court was correct to disallow them under *Rooker-Feldman*.

Mains also alleges that Chase, Black Knight, Nelson, and Bose McKinney violated the FDCPA prior to the state-court foreclosure judgment by trying to collect a debt that they knew to be invalid because of "defective and falsified documents." These claims, though rather vague and muddled, might generously be viewed as resting on conduct and injury that predate the state litigation. Because the FDCPA *may* provide relief that can be granted without setting aside a judgment of foreclosure, see *Long*, 182 F.3d at 555–56, they might not be jurisdictionally foreclosed by *Rooker-Feldman*.

But all of these claims *do* rest on the assertion that Chase was not authorized to collect from Mains, whether for reasons of technical defect or fraud. Yet the state court has already established that Chase *was* authorized to collect the debt, and we must give preclusive effect to that judgment. *Haber*, 578 F.3d at 556. As we have said repeatedly, the proper place to remedy any potential fraud in the state court's judgment is the state court. We must accept the state court's resolution of the issue, and dismissal on the merits would therefore be appropriate if the federal courts had jurisdiction.

E

In the final analysis, all of Mains's claims must be dismissed—most under *Rooker-Feldman*, and a few for issue preclusion. "[T]he right disposition, when the *Rooker-Feldman* doctrine applies, is an order under Fed. R. Civ. P. 12(b)(1) dismissing the suit for lack of subject-matter jurisdiction." *Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004). Such a dismissal cannot be with prejudice; "that's a disposition on the merits, which only a court with jurisdiction may render." *Id.* at 438. A dismissal pursuant to *Rooker-Feldman* must therefore be without prejudice.

Whether a complaint fails to state a claim, on the other hand, is a decision on the merits, and thus a dismissal may be either with or without prejudice. *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 336 (7th Cir. 2015). Here, issue preclusion prevents Mains from demonstrating a legal entitlement to relief, as his claims rely on issues that the state court has already decided. While issue preclusion is normally an affirmative defense raised in a motion under Federal Rule of Civil Procedure 12(c) (judgment on the pleadings) or 56 (summary judgment), "[a] litigant may plead [himself] out of court by alleging (and thus admitting) the elements of a defense … ." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). The defendants moved to dismiss in the district court on *res judicata* and 12(b)(6) grounds. Even if they had not done so, Mains has pleaded himself out of court on any FDCPA, TILA, and RESPA claims over which the court may have had jurisdiction. His complaint detailed the state-court litigation, judgment, and appeals, and summarized the issues he raised to the state court in opposing summary judgment. We may therefore consider these arguments on appeal.

### III

Although each of Mains's federal claims is either barred by *Rooker-Feldman* or fails to state a claim, there is an additional reason why his suit against defendant Cynthia Riley cannot go forward. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") divests courts of jurisdiction over any claim involving an act or omission of a depository institution placed in receivership by the FDIC until the claimant has exhausted his administrative remedies. 12 U.S.C. § 1821(d)(13)(D); *Farnik v. FDIC*, 707 F.3d 717, 720–21 (7th Cir. 2013).

Mains seems to allege that Riley, a former Vice President of WAMU, fraudulently endorsed his note even though she was not validly employed (by WAMU? as a Vice President?) at the time of the alleged endorsement. Or perhaps a better way to characterize the implication in his complaint is that Riley did *not* endorse his note, and that her purported endorsement was a forgery. But Mains also alleges in his RICO claim that Riley acted in her capacity as an employee of WAMU (or, at least, with the appearance of such an employee), and that WAMU then transferred the fraudulent note to the FDIC.

Any of Riley's acts or omissions as an employee and agent of WAMU taken before the FDIC receivership would be attributable to WAMU for purposes of liability, and FIRREA bars a court from considering this claim against WAMU. Insofar as Mains's complaint alleges that Riley's signature was a "blatant forgery," she is not even the proper party to sue, as she would not have forged her own signature. The correct party, we presume, would once again have been WAMU, which supposedly was responsible for the note's forgery and transfer, but FIRREA blocks such an action in the absence of administrative exhaustion.

## IV

When a district court does not have subject-matter jurisdiction over federal claims, it cannot exercise supplemental jurisdiction over any state claims under 28 U.S.C. § 1367. See *e.g.*, *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) ("[S]ince a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims."). Insofar as *Rooker-Feldman* deprived the district court

of jurisdiction over the federal claims, the state claims also had to be dismissed without prejudice for lack of jurisdiction. To the extent any of Mains's theories fall outside the scope of *Rooker-Feldman,* supplemental jurisdiction is possible. Nonetheless, the federal claims were properly dismissed on the merits at a very early stage, and so the district court properly could relinquish its jurisdiction over the state claims.

We therefore modify the district court's judgment to show that most of Mains's federal and state law claims are dismissed without prejudice, and the remainder are dismissed with prejudice. We AFFIRM the judgment as so modified.