In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-1564

TERRENCE MOORE and DIXIE MOORE,

*Plaintiffs-Appellants*,

*v.*

WELLS FARGO BANK, N.A.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 16-CV-656 — **William M. Conley**, *Judge*.

ARGUED SEPTEMBER 14, 2018 — DECIDED NOVEMBER 7, 2018

Before BAUER, HAMILTON, and SCUDDER, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiffs Terrence and Dixie Moore sued Wells Fargo Bank as Mr. Moore's mortgage servicer under the federal Real Estate Settlement Procedures Act and a similar Wisconsin statute. The Moores allege that Wells Fargo failed to respond adequately to a "qualified written request" for information under those laws. The district court granted summary judgment for Wells Fargo, and we affirm.

Terrence Moore's claims fail on their merits; Dixie Moore's claims fail for lack of standing.

I.  *The Real Estate Settlement Procedures Act and Wisconsin Law*

The facts of this case are better understood after a brief overview of the laws at issue. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., also known as RESPA, is a consumer protection statute that regulates the activities of mortgage lenders, brokers, servicers, and other businesses that provide services for residential real estate transactions. One provision, § 2605, addresses numerous aspects of the servicing of mortgage loans, including transfers from one servicer to another and the administration of escrow accounts that lenders use to ensure that insurance and property taxes are paid for the mortgaged property.

Section 2605(e) imposes duties on a loan servicer that receives a "qualified written request" for information from a borrower. Written correspondence triggers RESPA if it "includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower … that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) ("Any reasonably stated written request for account information can be a qualified written request.").

Section 2605(e)(2) requires the servicer to do one of the following three things no later than 30 business days after receiving a qualified written request from a borrower: (1) make appropriate corrections to the borrower's account and provide written notice of the corrections to the borrower; (2) after

investigating the borrower's account, provide a written explanation as to why the servicer believes the account does not need correction; or (3) after investigating the borrower's account, provide the requested information or explain in writing why the information cannot be obtained. The servicer must also include with the response the contact information for an individual who can provide assistance. *Id.* In § 2605(f), RESPA provides a private right of action for actual damages resulting from violations of § 2605.

Wisconsin law provides similar protection under Wis. Stat. § 224.77, which prohibits mortgage brokers from engaging in a wide range of conduct, including anything that would "violate any provision of this subchapter … or any federal or state statute." § 224.77(1)(k). This language "essentially points back to the alleged RESPA violation by prohibiting mortgage bankers and brokers from violating any federal statute that regulates their practice." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016). The Wisconsin statute requires mortgage servicers to maintain the competence necessary to maintain their role as a servicer and prohibits them from "engag[ing] in conduct … that constitutes improper, fraudulent, or dishonest dealing." § 224.77(1)(i), (m). Wisconsin law authorizes private civil actions to recover actual damages for violations of § 224.77. Wis. Stat. § 224.80(2); *Diedrich*, 839 F.3d at 594.

II. *The Facts for Summary Judgment*

The plaintiffs appeal the district court's grant of summary judgment, so we review the decision *de novo*, considering all evidence in the light most favorable to plaintiffs as the nonmoving parties. *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018). "While we must construe all

the facts and reasonable inferences in the light most favorable to the nonmoving party, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 503 (7th Cir. 2017) (citation and quotation marks omitted).

Under this standard, summary judgment is appropriate when no admissible evidence shows any dispute of material fact that could lead a jury to rule in the non-moving parties' favor, entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it "affects the outcome of the suit." *Monroe*, 871 F.3d at 503 (citation omitted).

We begin with the undisputed facts of Mr. Moore's default on his mortgage, his and the lender's attempts to modify the mortgage, and the foreclosure on the mortgage in state court. We then turn to the qualified written request and response themselves.

A. *Mortgage and Loan Modification Agreements*

The Moores' RESPA claims arose after years of struggles to keep up with mortgage payments. Terrence Moore purchased the home he shares with his wife, Dixie Moore, in 2006 with a 30-year adjustable mortgage owned at all relevant times by Deutsche Bank and serviced by Wells Fargo. The loan had a principal balance of $208,050 with an initial interest rate of 7.95% subject to change every six months beginning in 2008, with rates ranging anywhere from 5.625% to 13.95%. Mrs. Moore used an inheritance from her mother to help buy the house, but she was never named as a party to the title of the property, the mortgage, or the promissory note.

In late 2007, Mr. Moore began having difficulty paying his mortgage. As the servicer for the mortgage, Wells Fargo offered one forbearance plan in December 2007 and, as Mr. Moore's difficulties continued, another in September 2008. During this time, Mr. Moore fell so far behind in his payments that Deutsche Bank filed a foreclosure action. Deutsche Bank voluntarily dismissed that first foreclosure action, though, after Wells Fargo agreed to a loan modification with Mr. Moore in 2009. Despite the loan modification and dismissed foreclosure, Mr. Moore again failed to make the necessary payments. Wells Fargo negotiated a second loan modification agreement in December 2010.

The terms of the 2011 modification set the principal balance as $272,481.95, extended the loan term to 40 years, and changed the loan from an adjustable rate mortgage to a "Step Rate" mortgage with interest set at 2.0% for the first five years, 2.5% in year six, 3.0% in year seven, and 4.0% for the remainder of the loan term. The first payment under the 2011 modification was due March 1, 2011.

B. *Foreclosure and Bankruptcy Proceedings*

Mr. Moore failed to comply with the terms of the 2011 modification.[1] Deutsche Bank filed a second foreclosure action. The most critical event for our purposes came on November 13, 2012, when the state trial court entered a judgment

---

[1] The Moores now contend this is not true and that the foreclosure judgment was erroneous because they had been current in their mortgage payments through June 2011. We agree with the district court that "this purported dispute is not material because the issue of default was previously adjudicated by the state court" and cannot be relitigated here. *Moore v. Wells Fargo Home Mortg.*, No. 16-CV-656-WMC, 2018 WL 922370, at *8 (W.D. Wis. Feb. 15, 2018).

of foreclosure against Mr. Moore. He did not appeal the state court's judgment of foreclosure.[2]

A sheriff's sale was initially scheduled for June 4, 2013 but was rescheduled numerous times while the parties tried to find a solution that would allow the Moores to remain in their house. Those efforts included consideration of yet another modification and an attempt to mediate through the state court's foreclosure mediation program. When these attempts proved unsuccessful, the sheriff's sale was rescheduled for December 3, 2013.

One month before the rescheduled sale, Mr. Moore filed for Chapter 13 bankruptcy, resulting in an automatic stay of the sale. Negotiations continued. In June 2015, the parties entered into a third modified payment agreement that required Mr. Moore to pay Wells Fargo a lump sum of $9,000 by June 30, 2015. Mr. Moore again failed to do so, prompting Deutsche Bank to seek relief from the stay on December 7, 2015. The sheriff's sale was rescheduled for March 22, 2016.

Mr. Moore responded by converting his Chapter 13 bankruptcy into a Chapter 7 bankruptcy. That triggered another automatic stay only twelve days before the scheduled sale. On July 13, 2016 the bankruptcy court entered a discharge for the

---

[2] The judgment of foreclosure was an appealable final judgment in the state courts. See *Anchor Savings & Loan Ass'n v. Coyle*, 148 Wis.2d 94, 435 N.W.2d 727, 729–30 (1989); *Shuput v. Lauer*, 109 Wis. 2d 164, 325 N.W.2d 321, 325–26 (1982). The rule is different in foreclosure proceedings in federal courts, at least in the Seventh Circuit. See *Bank of America, N.A. v. Martinson*, 828 F.3d 532, 534 (7th Cir. 2016) (Wisconsin mortgage); *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771 (7th Cir. 2015) (Illinois mortgage).

Chapter 7 bankruptcy, and the sheriff's sale was rescheduled for October 11, 2016.

C. *The RESPA "Qualified Written Request"*

We now turn to the facts at the center of the Moores' statutory claims in this appeal. On August 15, 2016, nearly four years after the foreclosure judgment was entered and two months before the scheduled sale, Mr. Moore sent a letter to Wells Fargo explaining the history of the loan and foreclosure from his point of view. Most relevant for RESPA, his letter also asked twenty-two wide-ranging questions about his account. His questions included the identities of whoever owned his mortgage, details about how payments were applied throughout the duration of the loan, the creation of his escrow account, a list of all charges and late fees, and "an identification of each and every modification, forbearance, forgiveness, reinstatement, or other debt-relief or mortgage-relief type program, whether in-house or government-mandated, for which I have ever been considered by any servicer or lender, including the dates on which such program or plan was considered."

Wells Fargo received Mr. Moore's letter on August 18, 2016 and immediately treated it as a qualified written request. A representative from Wells Fargo called to confirm receipt the next day. Wells Fargo told Mr. Moore that it would respond on September 30—the last day to submit a written response to Mr. Moore within the 30-business-day deadline under § 2605(e)

D. *This Lawsuit*

Facing the October 11, 2016 sheriff's sale, the Moores decided to continue efforts in both state and federal courts to

remain in their foreclosed home. On September 28, two days before Wells Fargo's deadline to respond under RESPA, the Moores filed a motion in state court titled "Defendant's Counterclaims Maturing After Pleading" in an effort to reopen the 2012 foreclosure case. They sought "damages, costs and fees as are reasonable, and offset such damages against any amount owed to Deutsche Bank under the judgment of foreclosure before the sheriff's sale." They also requested an indefinite stay of the sheriff's sale while they litigated these counterclaims. The state court did not stay the sheriff's sale indefinitely, but the sale was delayed yet again while the state court heard the matter.

Also on September 28, the Moores filed this action in federal court, two days before Wells Fargo's response was due. In both the state and federal court, the Moores alleged that Wells Fargo violated RESPA and Wis. Stat. § 224.77 by failing to respond to the qualified written request. The Moores claimed they were harmed by Wells Fargo's failure to respond to the qualified written request because they "were going to use the responses to plan their next steps" regarding the looming sheriff's sale, but instead had to fight the foreclosure action with "no answers." The Moores also claimed that Wells Fargo's lack of response was causing them to suffer emotional distress because they feared losing their home unfairly, without knowing whether the lender had a right to foreclose. (They also raised other issues that are no longer part of the case.)

As Wells Fargo had promised, though, on September 30 a Wells Fargo representative called Mr. Moore and told him that the bank's response would be mailed that day. The response was a three-page letter with 58 pages of attachments.

The response addressed most of Mr. Moore's questions to some degree, but not all of them. For instance, the letter included information about the loan's current status, details about the most recent modification review, and insurance premium information. The letter also discussed the bankruptcy stipulation agreement and included an account history going back nearly three years from the date of the request. However, the letter and attachments did not address several of Mr. Moore's questions, such as the ones requesting every "modification, forbearance, forgiveness, reinstatement, or other debt-relief … for which [he had] ever been considered." Wells Fargo wrote that the questions it did not answer were "too broad" but invited Mr. Moore to provide further details about his requests so the bank could review them again. Nothing in the record suggests Mr. Moore followed up on that invitation.

On November 23, 2016, the state court held a hearing in the foreclosure suit. The court dismissed the Moores' new counterclaims as untimely. The sheriff's sale finally took place on November 29, 2016. In a further effort to remain in his foreclosed home, Mr. Moore filed for bankruptcy again on December 27, 2016. He admitted in his summary judgment affidavit in this case that the bankruptcy filing was a tactical move intended only to stall foreclosure. "I filed bankruptcy in 2016 to stop the sale of my house … the only reason I filed a bankruptcy petition at all a second time is because Wells Fargo was insisting on selling my house … I had no choice but

to file for bankruptcy, since that was the only way to avoid losing my house."[3]

In February 2018, the district court granted Wells Fargo's motion for summary judgment. The court found that Mr. Moore had standing under both federal and state law (and assumed Mrs. Moore had standing under state law), but that the Moores had not provided any evidence that Wells Fargo had actually violated RESPA or the Wisconsin statute. The court went on to conclude that even if Wells Fargo had failed to answer each and every one of Mr. Moore's questions completely, the Moores had failed to show how any failures had caused them any harm. In addressing the Moores' appeal, we consider the plaintiffs' standing before addressing the merits of the RESPA and state-law claims.

III. *Standing*

Standing is an element of subject-matter jurisdiction in a federal civil action, so we address that issue first. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). To have standing, Mr. and Mrs. Moore must each show that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To meet this burden at the pleading stage, "the plaintiffs' complaint must contain sufficient factual allegations of an injury resulting from the defendants' conduct, accepted as true, to state a claim for relief that is plausible on its face." *Diedrich*

---

[3] Due to the automatic stay from this most recent bankruptcy, the sheriff's sale has not yet been confirmed. As of oral argument before this court, the Moores were still living in the foreclosed house.

*v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The alleged injury must be concrete and not just a procedural violation divorced from any harm." *Diedrich*, 839 F.3d at 588, citing *Spokeo*, 136 S. Ct. at 1548. We conclude that Dixie Moore does not have standing, but Terrence Moore does.

A.  *Standing of Mrs. Moore*

Dixie Moore does not have standing to bring claims under RESPA or Wis. Stat. § 224.77. She is not named on the property's title or the mortgage or the note. She was not a party to any of the bankruptcies, was not a party to the 2011 loan modification, and even conceded in her interrogatory answers that Wells Fargo had no legal duty or obligation to her under RESPA. She cannot satisfy the *Spokeo* requirements because she has no legal interest that could have been harmed by Wells Fargo.

Mrs. Moore contends that she has standing under Wisconsin law as a "person aggrieved" by Wells Fargo's failure to respond fully to each of the questions in Mr. Moore's qualified written request. On this question of state law, we do not believe the Wisconsin courts would interpret the statute to recognize such claims by someone who is not a party to the property title or the mortgage loan.

Under Wisconsin law, "[a] person who is aggrieved by an act which is committed by a mortgage banker, mortgage loan originator, or mortgage broker in violation of [§ 224.77] may recover … in a private action." Wis. Stat. § 224.80(2). While the legislature did not provide a definition of "aggrieved" in this context, the Wisconsin Supreme Court has clarified that an

aggrieved party under § 224.77 is "'one having an interest …
which is injuriously affected'" by the alleged violation. *Die-
drich*, 839 F.3d at 594, citing *Liebovich v. Minnesota Ins. Co.*, 310
Wis. 2d 751, 751 N.W.2d 764, 775 (2008).

Mrs. Moore's assertion seems to stem primarily from the
claim that she used her inheritance to help purchase the home
she shares with Mr. Moore, and because of this "she will lose
her house if the lender is allowed to sell it." We assume the
truth of these points, but she still is not an owner of the prop-
erty or a party to the mortgage and promissory note at the
center of the statutory claim. We do not believe the Wisconsin
courts would interpret § 224.77 to provide individual claims
for all residents of the house and family members of the bor-
rower. Having provided no evidence that she has any legal
interest in this proceeding, and conceding that she does not
have standing under RESPA, Mrs. Moore cannot bring a chal-
lenge under § 224.77.[4]

---

[4] Even if Mrs. Moore did have standing for the § 224.77 claim, none of
her alleged harm could be traced back to Wells Fargo's response to Mr.
Moore's letter, for reasons we explain below with respect to Mr. Moore.
To support her claim of actual harm, Mrs. Moore alleges that it had been
"extremely upsetting to have to wonder why the lender claims we owe
this much money" and that she has "had trouble sleeping since we nearly
lost the house in the fall of 2016." Additionally, she "did not want Terrence
to have to file a new bankruptcy. When I learned that this was the only
way we had to save our house, I became extremely upset. I began crying
and got very emotional." She alleges Mr. Moore's bankruptcy filing also
led to fighting and general disruption in their marriage. None of these can
be traced to the alleged RESPA violation. Mrs. Moore herself identifies
that these injuries stemmed from the bankruptcy and the foreclosure, not
the answers or lack of answers to Mr. Moore's written questions.

B.  *Standing of Mr. Moore*

Terrence Moore meets the requirements for standing under RESPA and the state statute. See *Diedrich* 839 F.3d at 590, citing *Twombly*, 550 U.S. at 556. He brought this action as the borrower on a mortgage loan serviced by the defendant. Unlike Mrs. Moore, there is no dispute of his status as a party in any aspect of this case. Next, he alleged he was injured in fact by having to fight the state court case without all the information he needed from Wells Fargo. He claimed this caused him to "worry that we would lose our house … and I was substantially emotionally disturbed. I had trouble controlling my breathing and had headaches, and became extremely upset when I had to relay to my wife what had happened." Finally, he claimed Wells Fargo caused this harm and asked the court to award damages. This is sufficient to meet the low bar of standing, regardless of the ultimate merits of his statutory claims.

IV. *Mr. Moore's Claims for Damages*

The central issue in this appeal is whether a borrower can recover damages under 12 U.S.C. § 2605(f) when the only harm alleged is that the response to his qualified written request did not contain information he wanted to help him fight a state-court mortgage foreclosure he had already lost in state court. RESPA is meant to protect borrowers from the potential abuse of the mortgage servicers' position of power over borrowers, not to provide borrowers a federal discovery tool to litigate state-court actions. Even if Wells Fargo's incomplete response violated RESPA, Mr. Moore has not presented any

---

Therefore, she cannot show she was "aggrieved" by Wells Fargo's actions for the purposes of § 224.77.

evidence that there is a material dispute regarding any harm he suffered due to this violation.

RESPA provides in relevant part: "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure … In the case of any action by an individual, an amount equal to the sum of … any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). RESPA does not provide relief for mere procedural violations. Plaintiffs bringing claims under RESPA must show actual injury. See *Diedrich*, 839 F.3d at 589.

We assume for purposes of argument that at least some aspect of Wells Fargo's response was incomplete and might have violated § 2605(e).[5] Even with the benefit of that assumption, Mr. Moore needed to come forward with evidence supporting an award of actual damages. *Diedrich*, 839 F.3d at 591. While he adequately alleged an injury for the purpose of standing, he has not provided any evidence to survive summary judgment on the merits of those claims. *Id.* ("[T]aking the [plaintiffs'] facts as true, they must allege enough to demonstrate, not just that [the servicer] was responsible for

---

[5] Wells Fargo's response did not answer any of Mr. Moore's six questions regarding his loan modifications. The response incompletely answered three questions about the escrow account for the mortgage, three questions regarding Mr. Moore's account activities, and one question about the history of the mortgage's interest rates. In the letter to Mr. Moore, the only explanation Wells Fargo offered for these omissions was that his requests were "too broad." The district court found there was insufficient evidence to show this incomplete response violated RESPA in light of all the other actions Wells Fargo took to comply with the statute. Wells Fargo and the district court may well be right on this score, but we do not base our decision on that reasoning.

these injuries, but specifically, that [the servicer's] failures to comply with RESPA section 2605(e)(2) caused their injury.").

Here, Mr. Moore alleges his actual damages stem from out-of-pocket expenses and emotional distress. We analyze both and find no merit to either.

A. *Out-of-Pocket Expenses*

The only out-of-pocket expense Mr. Moore claims he incurred due to the alleged RESPA violations is the $900 he paid an attorney to review Wells Fargo's response to the qualified written request.[6] This theory would allow a borrower to create a RESPA claim that pulls itself up by its own bootstraps, creating the required damages by pursuing the inquiry itself, at least with the help of a lawyer. RESPA should not treat such attorney fees as sufficient to support a claim under § 2605(e). First, § 2605(f) requires Mr. Moore to provide evidence of "actual damages to the borrower *as a result of* the failure" of Wells Fargo to comply with RESPA. § 2605(f)(1)(A) (emphasis added). This causal connection is a critical element when bringing a RESPA claim. *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 694 (7th Cir. 2011); see also *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719 (8th Cir. 2018) ("Congress's use of the phrase 'as a result of' dictates that there must be a causal link between the alleged violation and the damages.") (citation omitted). We do not see how having an attorney

---

[6] In his brief, Mr. Moore argued that his out-of-pocket costs also included attorney fees for drafting the qualified written request itself and the cost of filing for bankruptcy, but in oral argument his lawyer clarified that the only out-of-pocket expenses Mr. Moore seeks are attorney fees for reviewing Wells Fargo's response.

review the response could be a cost incurred as a result of an alleged violation.

Even if Mr. Moore's attorney fees were directly attributable to Wells Fargo's actions, they would not constitute actual damage under RESPA. We have noted that "simply having to file suit, however, does not suffice as a harm warranting actual damages." *Diedrich*, 839 F.3d at 593 (citations and quotation marks omitted). Also, attorney fees are addressed in another section of the statute. We see no need to stretch the actual damage provision to cover attorney fees as well, at least those directly related to the RESPA issues. See 12 U.S.C. § 2605(f)(3) (prevailing plaintiffs can collect attorney fees). Such a finding would render § 2605(f)(3) superfluous, which is, all other things equal, a result courts generally try to avoid. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("cardinal principle of statutory construction" is that "no clause, sentence, or word shall be superfluous").[7] Accordingly, Mr.

---

[7] There are good reasons not to rely too heavily on the canon against surplusage. See Matthew R. Christiansen & William N. Eskridge, Jr., *Congressional Overrides of Supreme Court Statutory Interpretation Decisions, 1967–2011*, 92 Tex. L. Rev. 1317, 1448, 1469 (2014) (citing evidence that "repetition (i.e., surplusage) is typically what supporting institutions and groups want from the legislative process," so the canon against surplusage is "antidemocratic in a serious way"); William N. Eskridge, Jr., *The New Textualism and Normative Canons*, 113 Colum. L. Rev. 531, 579 (2013) ("[T]he rule against surplusage … is especially problematic because the legislative process operates under the opposite assumption and so that canon will often thwart legislative deals rather than enforce them."); Brett M. Kavanaugh, *The Courts and the Administrative State*, 64 Case W. Res. L. Rev. 711, 718 (2014) ("[M]embers of Congress often want to be redundant [because] they want to 'make doubly sure,'" so courts should be more careful in applying canon); Richard A. Posner, *Statutory Interpretation— in the Classroom and in the Courtroom*, 50 U. Chi. L. Rev. 800, 812 (1983) ("[A]

Moore has failed to show that he suffered out-of-pocket expenses as a result of any alleged RESPA violation by Wells Fargo.

B. *Damages for Emotional Distress*

Mr. Moore also claims damages under RESPA for emotional distress. We have held that emotional distress can support a claim for damages under RESPA. *Catalan*, 629 F.3d at 696. To survive a motion for summary judgment on the issue, the plaintiff must offer evidence that the emotional distress he suffered was caused by the claimed RESPA violation. *Diedrich*, 839 F.3d at 593. In *Diedrich*, we noted that *Catalan* does not specify "what amount of evidence is sufficient to link an injury to a mortgage company's failure to respond properly to a qualified request for information." *Id*. We held in *Diedrich* that a statement merely alleging that the servicer injured the plaintiffs because of everything the plaintiffs had endured throughout the course of litigation was insufficient. *Id.*

In *Catalan*, we reversed summary judgment for the defendants partially on the ground that there was dispute of material fact as to the plaintiffs' allegations of emotional distress damages resulting from the defendant's egregious RESPA violations. 629 F.3d at 696. The plaintiffs in *Catalan* were actually making their mortgage payments. The RESPA violations were the source of their stress about the prospective loss of their

---

statute that is the product of compromise may contain redundant language as a by-product of the strains of the negotiating process."). Those criticisms carry less weight in a case like this one, however, where the statute specifically authorizes a fee award for a prevailing plaintiff, separately from the provision for damages, as is so common among fee-shifting statutes.

home. *Id.* Medical records reflected one of the plaintiffs was suffering from increased stress due to her "house situation," and the plaintiffs "described their emotional turmoil in reasonable detail and explained what they believe to be the source of that turmoil." *Id*. One plaintiff in *Catalan* testified that she suffered from loss of sleep, headaches, sadness, shakiness, nervousness, and other signs of depression that she attributed to being ignored by the defendants. Her husband testified that he felt useless when watching his wife cry every day due to the situation and his inability to console her made him feel helpless. This testimony was sufficient to preclude summary judgment as these non-conclusory statements were made with personal knowledge.

Here, Mr. Moore alleges in his complaint that he suffered emotional distress because he had to fear "losing their home [without knowing] whether the lender has a right to [foreclose]" and had to worry that "their home will be sold improperly or illegally." In his brief, Mr. Moore also states he had to "break the news to his wife that they were unsuccessful in state court and would have to file bankruptcy." He further claimed in his affidavit in response to defendant's motion for summary judgment that after the judge refused to reopen the state court case, he "began to worry that we would lose our house … and I was substantially emotionally disturbed. I had trouble controlling my breathing and had headaches, and became extremely upset when I had to relay to my wife what had happened." This is simply not enough to show damages caused by any RESPA violation.

To be clear, we recognize that the prospective and even imminent loss of a home can be highly stressful. The problem here is that Mr. Moore's stress had essentially nothing to do

with any arguable RESPA violations. The obvious sources of his stress were the facts that he was not able to make timely payments toward his mortgage, that the lender had won a judgment of foreclosure, and that sale and eviction were imminent.

Mr. Moore directly links his headaches and breathing trouble to the state court's decision not to reopen the 2012 foreclosure case. He argues that having all the information he requested from Wells Fargo would have given him a greater chance of success in state court and that appearing in the state court's November 2016 hearing without this information caused him emotional distress. This theory is too attenuated; it relies too much on speculation about what a state court might have done under other, unknowable circumstances, to qualify as actual harm under RESPA. See *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 858 (7th Cir. 2017) (alleged harm from RESPA violation must not be "too attenuated from the alleged violation."). RESPA was not intended to give people who cannot pay their mortgages the means to engage in burdensome fishing expeditions in the hope of somehow passing the blame for their foreclosure onto the mortgage servicers in state court.

There is no need to prove the emotional distress was caused *solely* by the alleged RESPA violation. But nothing here suggests that the emotional distress Mr. Moore faced was caused by anything but the foreclosure, which occurred four years earlier. Likewise, having to tell his wife that they had to sell their house and file for bankruptcy are traceable back only to the 2012 judgment of foreclosure, not to any alleged RESPA violation in 2016. The district court correctly found that Mr.

Moore failed to provide evidence of actual injury sufficient to survive summary judgment on his RESPA claims.

## V.  *Wisconsin Law Claims Under Section 224.77*

Finally, the district court correctly granted summary judgment on the state-law claims under § 224.77. In addition to prohibiting servicers from acting improperly and operating in an incompetent manner, § 224.77 "essentially points back to the alleged RESPA violation" and does not expand the servicer's liability. *Diedrich*, 839 F.3d at 587. In this case, most of Mr. Moore's claims under § 224.77 are barred by the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017). Especially relevant here, *Rooker-Feldman* bars claims that *could* have been argued in state court. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983); *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (whether a claim that could have been brought in state court is barred under *Rooker-Feldman* "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy.").

Mr. Moore's never-say-die attitude is impressive, but there are limits, and *Rooker-Feldman* is one of them. *Mains*, 852 F.3d at 677 (*Rooker-Feldman* barred RESPA claim in federal court because the "claims could be sustained only by disregarding or effectively vacating the state [court's] judgment of

foreclosure."); see *Shuput v. Lauer*, 109 Wis. 2d 164, 325 N.W.2d 321, 326 (1982) (Wisconsin judgment of foreclosure is final for purposes of appeal before sheriff's sale). Mr. Moore argues that the 2011 modification was unjust, the foreclosure was entered on flawed grounds, the foreclosure amount was incorrect, and the state court should have reopened his case. None of these arguments belong in federal court.

Mr. Moore insists he can bring these claims before us because he seeks damages rather than reconsideration of the state court decision, but that assertion denies the substance of what he actually seeks in federal court. To find in favor of Mr. Moore, we would be required to contradict directly the state court's decisions by finding that Deutsche Bank was not entitled to the final judgment of foreclosure. This we simply cannot do.[8]

---

[8] Mr. Moore argues that *Rooker-Feldman* should not apply because Wells Fargo was not a party in the state court action. That argument does not change the fact that a judgment in favor of the petitioner would overrule the state court's decision, and Mr. Moore's state-court complaint concedes Wells Fargo was in privity with Deutsche Bank: "Wells Fargo was at all times acting with the express or implied approval and direction of [Deutsche Bank]." Mr. Moore's action would alternatively be barred under claim preclusion. See *Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 883 (7th Cir. 2017) (finding petitioner's claim against mortgage servicer was barred under claim preclusion because servicer was in privity with mortgager); see also *Lewis v. Citibank, N.A.*, 179 F. Supp. 3d 458, 463 (E.D. Pa. 2016) (claim against servicer was barred because servicer was in privity with mortgagor and "*res judicata* also precludes claims that were not actually litigated, but that could have been litigated, during the previous proceedings.").

Even if Mr. Moore's claims were not barred under *Rooker-Feldman*, Wisconsin law would preclude us from ruling in his favor. In *A.B.C.G. Enterprises, Inc. v. First Bank Southeast, N.A.*, the Wisconsin Supreme Court held ABCG could not bring counterclaims alleging the mortgagee was really to blame for the conditions leading to its foreclosure after the judgment was already entered because "a favorable judgment for ABCG in this action would nullify the prior foreclosure." 184 Wis. 2d 465, 515 N.W.2d 904, 909–910 (1994). Even though ABCG was asking for damages rather than the overruling of the foreclosure decision, the court explained that "judgment in favor of ABCG would … directly undermine the original default judgment in which the court held that under the circumstances, foreclosure was proper." *Id.* at 911. Similarly here, federal courts could not award Mr. Moore damages without making findings that would directly undermine the state court's foreclosure judgment.

Mr. Moore's assertion that his attorney fees constitute actual harm under § 224.77 fails for the same reasons explained above under RESPA. See also *In re Lofton*, 569 B.R. 747, 754 (Bankr. W.D. Wis. 2017) (rejecting argument that attorney fees constitute actual damages under § 224.77 because "costs, expenses, and reasonable attorney fees … are in addition to and do not constitute actual damages … Merely having an attorney make phone calls or file suit does not suffice as harm warranting actual damages").

The judgment of the district court dismissing this action is AFFIRMED as to Terrence Moore on the merits and as to Dixie Moore for lack of standing.