In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-2803

DOUG TAYLOR,

*Plaintiff-Appellant,*

*v.*

CITY OF LAWRENCEBURG, DEARBORN COUNTY, STATE OF INDIANA, an Indiana municipal corporation, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:14-cv-00077-RLY-TAB — **Richard L. Young**, *Judge.*

ARGUED JANUARY 18, 2018 — DECIDED NOVEMBER 20, 2018

Before SYKES and HAMILTON, *Circuit Judges*, and LEE, *District Judge.**

LEE, *District Judge*. The appellant, Doug Taylor, claims that the Board of Public Works and Safety of the City of Lawrenceburg ("the Board") terminated his employment with the City

---

* The Honorable John Z. Lee, District Judge for the United States District Court for the Northern District of Illinois, sitting by designation.

because of his disagreements with the Mayor and exposure of purported wrongdoing by City officials. Seeking redress, Taylor filed suit against the City, members of the Board, and several City officials, bringing a claim of First Amendment retaliation pursuant to 42 U.S.C. § 1983. Taylor also asserted state law claims of defamation, violation of free-speech rights under the Indiana constitution, and violation of Indiana's whistleblower statute. The district court entered summary judgment in the City's favor as to Taylor's claims. We affirm.

## I. BACKGROUND

Doug Taylor is a former police officer of the City of Lawrenceburg, Indiana. He also held positions with the City's civil-city, parks, and electric departments. Taylor ran for a position on Lawrenceburg's City Council and, in April 2011, improperly appeared in police uniform at an event for his campaign. Taylor also inaccurately represented on his police time sheet that he was on duty during the campaign event. The Indiana State Police investigated this conduct, resulting in the filing in October 2011 of criminal charges against Taylor for Official Misconduct and Ghost Employment. Taylor won election to the City Council in November 2011.

The Board placed Taylor on administrative leave with pay shortly after the criminal charges were filed. It later moved him to a front-desk position within the police department in January 2012.

On March 13, 2013, Taylor signed a deferred prosecution agreement admitting to the criminal charges and agreeing to resign from the City Council. The next day, he distributed to local, state, and federal law enforcement agencies an eleven-

page letter accusing the Board and various City officials, including Mayor Dennis Carr, of corruption and criminal wrongdoing.

A week later, the Board notified Taylor of its intent to terminate his employment as a police officer (as well as with "any other department of the City") and informed him of his right to a hearing pursuant to Indiana Code § 36-8-3-4(c). Taylor requested a hearing.

Prior to the hearing, the Board adopted a rule that its decision would be determined by a simple majority vote of the Board members who were present during the presentation of evidence and argument. Five members, including the Mayor, were present to hear the evidence and arguments at Taylor's hearing. After considering the evidence, the Board voted 2 to 1 to terminate Taylor's employment. The Mayor, who votes only in the event of a tie, did not vote, and one other member of the Board abstained. Taylor's employment was terminated, and he stopped receiving paychecks from the City.

The Board subsequently issued its findings of fact and law pursuant to § 36-8-3-4(i). In its findings, the Board credited a local prosecutor's testimony that he would not accept case-related information from a police officer, like Taylor, who had admitted to a crime of dishonesty. The Board also rejected Taylor's contention that the Board members were biased against him.

In addition, the Board rebuffed Taylor's suggestion that the termination proceedings were initiated in response to his March 14, 2013, letter accusing Board members and others of wrongdoing. The Board found "no causal connection" be-

tween the termination proceedings and the letter and explained that it had waited for the resolution of Taylor's criminal charges before issuing the notice of termination.

Pursuant to § 36-8-3-4(e), Taylor had the right to appeal the Board's decision to "the circuit or superior court of the county in which [the Board was] located," within thirty days, § 36-8-3-4(f), after which the Board's decision would become "final and conclusive," § 36-8-3-4(g). Taylor timely appealed the Board's decision to the Dearborn County Superior Court on October 25, 2013, but he voluntarily dismissed the appeal in August 2014, before it was adjudicated.

## II. ANALYSIS

The district court entered summary judgment in favor of the defendants, concluding that Taylor's First Amendment retaliation claim was barred by *res judicata* or collateral estoppel and that the individual defendants were immune to Taylor's state law claims pursuant to § 36-13-3-5(b) because he had alleged that they had acted "under authority or color of state law." The district court also found that the state law claims failed on the merits. We review a grant of summary judgment *de novo. Brunson v. Murray*, 843 F.3d 698, 704 (7th Cir. 2016).

In *University of Tennessee v. Elliott*, 478 U.S. 788, 798–99 (1986), the Supreme Court held that federal courts must give state administrative factfinding "the same preclusive effect to which it would be entitled in the State's courts," provided that the state agency acted in a judicial capacity and resolved issues that the parties had an adequate opportunity to litigate.

We have no trouble concluding that the Board acted in a judicial capacity here. In *Goodwin v. Board of Trustees of the University of Illinois*, 442 F.3d 611, 620 (7th Cir. 2006), we held that

a state board that made employment decisions had acted in a judicial capacity because (1) its decision was subject to judicial review pursuant to state law, (2) a hearing officer had presided over the hearing, which provided the opportunity for counsel to examine and cross-examine witnesses under oath, and (3) the board issued findings of fact. The same is true here.

For his part, Taylor points to evidence that, he contends, shows certain Board members engaged in improper *ex parte* communications with some witnesses, City employees, and fellow Board members. But Taylor had the opportunity to raise these issues when he appealed the Board's determination to the Indiana Superior Court and chose not to do so. Given Taylor's ability to fully litigate these issues before the Board, the Board's findings of fact and law, and the availability of judicial review, we are satisfied that the Board acted in a judicial capacity.

Turning to the application of issue preclusion under Indiana law, as we explained in *Mains v. Citibank, N.A.*, 852 F.3d 669, 675–76 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 227 (2017), the Supreme Court of Indiana has stated that "[i]n general, issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit." *Miller Brewing Co. v. Ind. Dep't of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009). Moreover, "Indiana courts follow federal precedents in applying issue preclusion (also commonly referred to as collateral estoppel)." *Mains*, 852 F.3d at 675–76 (citing *Miller*, 903 N.E.2d at 68). Thus, "[i]n order for issue preclusion to apply under Indiana law, the … decision must be final." *Id.* at 676. From there, we ask two questions: "(1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply

collateral estoppel given the facts of the particular case." *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 705 (Ind. Ct. App. 2005).

Taylor first argues that issue preclusion should not apply because the Board's decision was a nullity and, therefore, not final. Prior to Taylor's hearing, the Board had adopted a decisional rule requiring a majority vote of the Board members who were present to hear evidence and argument. Five Board members participated in the hearing, but only three actually voted, with two out of the three voting for termination. And so, Taylor contends, the Board "never made a decision to terminate his employment."

Of course, Taylor cannot mean to argue that the Board issued no decision at all. It made a determination and issued findings of fact and law. As a result, Taylor's employment was terminated, and he stopped receiving checks from the City. Instead, what Taylor is doing is challenging the validity of that decision.

But the appropriate forum for Taylor to press this issue was the Circuit or Superior Court in Dearborn County. § 36-8-3-4(e). Knowing this, Taylor filed an appeal, but withdrew it before it could be adjudicated. Under Indiana law, once an appeal is withdrawn, it is as though it was never filed. *See State ex rel. Weaver v. Paxson*, 11 N.E.2d 677, 678 (Ind. 1937) (holding that police officer who withdrew appeal of a Board of Public Works decision had "manifestly" failed to appeal). And, because "the decision of the board is final and conclusive upon all persons not appealing," § 36-8-3-4(g), the Board's decision became final as to Taylor once he withdrew his appeal.

The next question is whether Taylor had a full and fair opportunity to litigate before the Board the same issues that underlie his claims in this suit. The crux of Taylor's federal and state free-speech retaliation claims, as well as his state law whistleblower claim, is his contention that the Board terminated him because of his March 2013 disagreements with Mayor Carr.

Taylor litigated these issues before the Board, and the Board found against him. In its findings, the Board stated that there was no causal connection between its decision and Taylor's letter, but rather that the proceedings were "causally related to the resolution or disposition of judicial proceedings … . Specifically, … [Taylor] was subject to criminal charges prior to the execution of the deferred prosecution agreement, such that disciplinary proceedings could not commence until after the execution of the agreement. The Board finds that until [Taylor] admitted the elements of his criminal activity in the context of a judicial proceeding, any prior admission by [him] was entitled to less weight." Moreover, as to Taylor's clashes with Mayor Carr, the Board also rejected his argument that the Board members were improperly biased or prejudiced against him.

Taylor therefore had the opportunity to litigate before the Board the same material issues underlying his claims in this case. And, for the same reasons discussed above, we are convinced that Taylor had a full and fair opportunity to be heard on these issues.

Lastly, as to his defamation claim, Taylor argues again that this claim should be revived because the Board's determination was not approved by the required majority vote. His defamation claim arises out of the Board's proposed findings,

which he contends improperly credited the testimony of a prosecutor about Taylor's inability to testify credibly in his role as a police officer after having admitted to a crime of dishonesty. But, again, Taylor failed to appeal the Board's determination and, therefore, is bound by its findings as to these issues under Indiana law. To the extent Taylor's defamation claim rests on issues that could not have been litigated until after the Board issued its decision, Taylor could argue that issue preclusion should not apply; but he does not make that argument and thus waives it. *See Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002). In any event, it is difficult to see how the Board's findings regarding the testimony by the state prosecutor that he would not rely on Taylor in the future could possibly constitute defamation.

The district court's decision is affirmed.